# Sorg et al. *v.* Frederick et ux., Appellants.

*Trespass—Mines and mining—Injuries to mines—Damages—Measure of damages—Punitive damages.*

1. A deed conveyed all the coal and other minerals "lying in and under the surface" of certain land, without liability "for any damage done to the surface of said described tract of land, in consequence of mining and working out said coal by the usual mode of working and mining the same," and further conveyed to the grantee the "perpetual right and privilege of passing through and under said described tract of land with other coal and minerals." After a part of the coal had been removed the then owner of the surface at the point where the entry into the mine was made diverted the waters of a stream into the mine, causing a cessation of the operations for a time; the lessees of the mine cleaned out the debris, which the water carried into the mine, and in an action of trespass sought to recover damages for the cessation of the operation of the mine and for the cost of cleaning out the debris. Defendants contended that the obstructions which plaintiffs had removed accumulated before the date of the lease to plaintiffs. Plaintiffs contended that they removed only the debris which accumulated after they took possession under their lease. The trial judge submitted the case to the jury, which found a verdict for plaintiffs upon which judgment was entered. *Held,* no error.

2. Where, in such case, there were numerous acts of defendants of the same wrongful character, which were discussed by the trial judge, the fact that the court did not specifically repeat the measure of damages in discussing defendants' separate acts was not material where the jury was plainly told that plaintiff could recover only for the costs of cleaning out so much of the debris as had been brought into the mine by defendant subsequent to the time when plaintiffs took possession.

3. Where there was evidence of repeated wrongful acts on the part of defendants, notwithstanding plaintiffs' frequent protests that their mine was being injured and its operation interfered with, and that defendants threatened plaintiffs and their employees with bodily harm if they attempted to close the opening through which water was brought into the mine, the trial judge was justified in charging the jury that if they concluded the trespass was wilful and malicious on the part of defendants they might allow punitive as well as actual damages.

4. In such case, the court properly charged the jury that plaintiffs could recover damages suffered by reason of the stoppage of their mine, provided the loss was caused by the harmful acts of defendants, and not otherwise.

5. The fact that mining operations had been discontinued for fifteen years before plaintiffs took possession under their lease, did not deprive them of the right to remove coal through the entry under defendants' land, where there was still remaining a considerable quantity of coal which plaintiffs had the right to remove, where the deed under which plaintiffs' lessors claimed gave to them the perpetual privilege of passing through and under the land with other coal and minerals and where the deed for the surface to defendants contained a reservation of the coal with the right to use the entries for transportation of any coal that lies in the vein or stratum under the property: Webber v. Vogel, 189 Pa. 156; Patterson v. Graham, 164 Pa. 234, distinguished.

Argued Oct. 10, 1916.   Appeal, No. 53, Oct. T., 1916, by defendants, from judgment of C. P. Allegheny Co., Oct. T., 1914, No. 2213, on verdict for plaintiffs, in case of John L. Sorg and Peter L. Sorg v. Edward Frederick and Anna Sophia Frederick, his wife.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Trespass for injuries to plaintiffs' mines.   Before CARPENTER, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for $1,620 and judgment thereon. Defendants appealed.

*Errors assigned* were instructions to the jury, the refusal of the court to direct a verdict for defendants and to enter judgment for defendants n. o. v.

*John P. Patterson,* with him *J. H. W. Simpson* and *Crumrine & Patterson,* for appellants.—It was error to permit recovery for the cost of cleaning out the mine: Zehner v. Shepp, 54 Pa. Superior Ct. 529; Lentz v. Carnegie Bros. & Co., 145 Pa. 612; Hannay v. Stewart, 6 Watts 487; Switland v. Holgate, 8 Watts 385.

Punitive damages were improperly allowed.

It was not material that the operations of the mine were discontinued where it appeared that there was still some coal which had been separated from the land but which had not been removed.

*W. H. Pratt,* for appellees.

OPINION BY MR. JUSTICE FRAZER, January 8, 1917:

Previous to 1896, the heirs of William Stone owned and operated a coal mine in Allegheny County underlying a tract of land, a part of which they acquired under a deed conveying to them "all the......coal and all other minerals lying in and under the surface" of the land without liability "for any damage done to the surface of said described tract of land, in consequence of mining and working out said coal by the usual mode of mining and working the same." The grantees also to have the "perpetual right and privilege of passing through and under said described tract of land with other coal and minerals, etc." Subsequent to the deed to the Stone heirs, the surface of the tract was conveyed to Anna S. Frederick, one of the defendants, the deed "excepting and reserving therefrom and thereout all the coal underlying the same and the right to mine, take and carry away all said coal and also the right to use and occupy any and all entries under said tract of land and the right to enter upon said tract of land for the purpose of repairing any entry or entries when it becomes necessary and the right to use said entries for the transportation of any coal that lies in that vein or stratum" and without liability for surface support. The work of mining the coal was suspended in 1896 at which time about fourteen acres remained unmined. Nothing further was done until December 9, 1911, when a lease of the remaining coal was made to plaintiffs who proceeded to put the mine in repair and began taking out the unmined coal. In doing so they were obliged to pass through the entry

under defendants' property. The surface covering the entry or tunnel was quite shallow, not over three or four feet at many places. A small stream ran through defendants' land and to carry its flow of water over the tunnel a plank roof was constructed which served the purpose of supporting the bed of the stream and preventing its waters from breaking through into the mine. Near the creek and on defendants' property was a break in the surface or cave-in, forming what is termed a "pit-hole." There is evidence that in 1907 defendants dug a trench or ditch on their land from the creek to the pit-hole and diverted the water, mud and sewage of the creek into the mine. Following plaintiffs' possession under their lease, they turned the water of the creek into the original channel, thereby preventing it from flowing into the pit-hole whereupon defendants again changed the natural course of the run, causing the water to flow into the mine through the pit-hole opening. Defendants also made two other openings in the bed of the stream, thus permitting water and sewage to enter the mine at these additional places. One was made March 10, 1914; another July 16, 1914. They also deposited sewage and rubbish in the air shaft leading into the mine. Plaintiffs alleged these acts of defendants put them to great expense to keep the passageway clear and that at one time a cessation of operations in the mine was made necessary until the debris could be removed. Following a number of ineffectual attempts to induce defendants to desist from interfering with the operation of plaintiffs' mine, an action of trespass was begun to recover the cost of cleaning the mine and for a loss due to suspending operations while the work was being carried on. There was also a claim for punitive damages. The actual loss, cost of cleaning the mine as claimed by plaintiffs, was $4,967.55.

There was a verdict for plaintiffs for $1,620 followed by motions for a new trial and judgment non obstante veredicto, which were overruled and judgment entered on the verdict. Defendants appealed.

The assignments of error are principally to various parts of the charge of the court below, the chief complaint being raised by the second assignment which alleges the trial judge erred in submitting to the jury the question of damages, so far as the cost of cleaning the mine was concerned, for the reason that a portion of the obstruction had accumulated before the date of the lease to plaintiffs, for which they admittedly could not recover, and, further, there was not sufficient evidence, to submit to the jury, fixing the proportion of the expense due for removing rubbish, etc., accumulated subsequent to that date. Plaintiffs however contended they removed only the debris accumulated after December 9, 1911, when they went into possession under their lease. If this be true, there can be no question of division of the damages. Although the evidence is not clear on this point, it seems the cleaning required almost constant attention to keep the entries in usable condition. One witness testified to rubbish and sewage being deposited in the mine as a result of defendants' acts almost continuously between December, 1911, and 1914, and another that the amount claimed was the expense plaintiffs were put to in removing the debris collected between those dates. While the latter witness subsequently admitted he did not see the mine before the date of the lease, it was for the jury and not for the court to say whether the testimony that only accumulations resulting subsequent to the lease had been removed, was to be believed or disregarded. The trial judge properly instructed the jury that the burden was on plaintiffs to show the damage arose subsequent to the time they took possession under their lease, and, if part accumulated previous to that time, show what part of the damage claimed was due to the removal of subsequent accumulations. In Zehner v. Shepp, 54 Pa. Superior Ct. 529, cited by defendants, the damage was caused by a deposit of coal dirt in a dam or mill-race. No claim was made

that plaintiffs' mill had been damaged by defendants before the time plaintiffs took possession of the mine for which damages had been recovered; the only proof, however, of damage was the cost of removing the entire accumulation without evidence of cost of taking out the part which had previously collected. Here there was evidence that the actual cost was for the removal of debris accumulated since plaintiffs took possession of the mine.

Defendants also allege the court failed to adequately instruct the jury regarding the measure of damages. The case was tried on the theory that defendants were liable for the cost of removing such part of the obstructions as had collected or were deposited in the mine by reason of acts subsequent to the time plaintiffs took possession under their lease. The large volume of testimony taken indicates clearly that all parties understood this to be the proper measure of damages, the only dispute being the amount and extent of liability. The jury could therefore not well have been misled as to what damages, if any, they should allow. The court, after referring to the figures given by plaintiffs bearing on the cost of removal of the accumulations, charged that "the expense was something very large; it amounted to the employment of one man for a very considerable length of time, and it is for the plaintiffs to satisfy you that they actually spent that money as a result of the wrong done by the defendants, and if they have not made that clear to your satisfaction, of course you cannot allow damages for it. It is the business of a plaintiff who claims damages to show what his damages are, and if this money was spent generally cleaning out the mine, and part of it was due to a condition that existed before they rented, they cannot claim that. They rented it as they found it. So you will keep that clearly in your minds in figuring the damages, if you come to the question of damages."

In view of the fact that all damages claimed were the

result of the same character of wrongful acts on the part of defendants, the jury could not have been misled as to the basis on which they were to compute their finding, even though the court did not specifically repeat the standard of measure in discussing the separate acts of defendants.   In regard to the measure of damages suffered by reason of the stoppage of plaintiffs' mine, the court properly charged that plaintiffs could recover such compensation provided the loss was caused by the wrongful acts of defendants and not otherwise.

Defendants also allege error on part of the court below in allowing the jury to impose punitive damages.   There was evidence of repeated wrongful acts on the part of defendants, notwithstanding plaintiffs' frequent protest that their mine was being injured and its operation interfered with and that defendants disregarded these protests and threatened plaintiffs or their employees with bodily harm if they attempted to close the openings and prevent the water of the stream from flowing into the mine.   Under these circumstances the court was justified in charging that if the jury concluded the trespass was wilful and malicious on the part of defendants they might allow punitive as well as actual damages: Nagle v. Mullison, 34 Pa. 48; Pittsburgh, Cin. & St. Louis Ry. Co. v. Lyon, 123 Pa. 140; Rider v. York Haven Water & Power Co., 251 Pa. 18.

Defendants also deny the right of plaintiffs to sue for trespass committed by defendants long after the original operation of the mine ceased and rely in their argument on Webber v. Vogal, 189 Pa. 156, and Patterson v. Graham, 164 Pa. 234.   These cases are not in point, for the reason that in the present case the deed under which plaintiffs' lessor claimed gave to the grantees the perpetual right and privilege of passing through and under the land with other coal and minerals and the deed for the surface to defendants contained a reservation of the coal with the right to use the entries for transportation

of any coal that lies in that vein or stratum.    And although mining had actually ceased for a period of about fifteen years there was still remaining a considerable quantity of coal which plaintiffs had the right to remove. Under these circumstances, the fact of discontinuance of operations for a time is immaterial.

The assignments of error are all overruled and the judgment is affirmed.