## Edwin J. Schoettle Co. v. Oliver Bros., Inc.

R. T. McCracken, for plaintiff; Wessel, Bennett & Weiss, for defendant.

ALESSANDRONI, J., April 17, 1930.—Plaintiff filed a bill of complaint averring that the defendant had made wilful and fraudulent use of a drawing owned by the plaintiff, and praying that the defendant be enjoined from copying, simulating or using the drawing; that the defendant be ordered to deliver up for destruction all copies of the drawing and that the defendant be ordered to pay damages for the fraudulent and wrongful appropriation and misuse of the plaintiff's drawing. The defendant filed an answer admitting the use of the plaintiff's drawing, but averring that said use was due to inadvertence and that the plaintiff suffered no loss whatsoever as a result of the use to which the drawing was put. Preliminary objections to the bill previously filed were overruled. Upon a consideration of the bill, the answer thereto and the testimony produced at the hearing, the court makes the following

### Findings of fact.

1. The plaintiff corporation is a paper box manufacturer and the defendant is a manufacturer of masquerade costumes.

2. The plaintiff solicited an order from the defendant for boxes and submitted a sketch which would make an attractive cover for the boxes. This was done about the latter part of April, 1928.

3. Plaintiff and defendant disagreed on the price of the boxes, the chief item of disagreement being a charge of $150 for the sketch plate necessary in the manufacture of the boxes, and, as a result, the plaintiff did not get the order.

4. Plaintiff first submitted a pencil sketch, and at the request of the defendant submitted an ink sketch, but when the plaintiff asked for the return of this sketch, the defendant delayed about two weeks in returning it. During that time the plaintiff's salesman made about ten efforts to obtain it, but received only excuses.

5. Defendants took the sketch and submitted it to another box manufacturer who made boxes for them, using the identical sketch and design.

6. The plaintiff's salesman, during the first or second week of June, saw the new boxes being delivered to the defendant decorated with the identical design which he had submitted. The plaintiff's attorney, on June 16, 1928, wrote the defendant, advising it that its use of the plaintiff's drawing was wrongful, and requested that its use be stopped immediately.

7. Defendant failed to accede to this request until October, 1928, when it stopped using the boxes so marked. In the meantime, however, defendant

had used 26,000 of the 32,000 boxes originally obtained which were decorated with the plaintiff's design.

8. The sketch submitted by the plaintiff to the defendant was practically of no value as a sales proposition after it had been rejected. The cost of making the pencil and ink sketches was $16.

## Discussion.

The facts in this case lead the court to conclude that the defendant made a wrongful and fraudulent use of the plaintiff's sketch. The plaintiff, during the latter part of April, 1928, submitted a sketch to be used on the boxes which it was endeavoring to sell the defendant, said sketch being designed primarily for the defendant's business and suggested in an effort to make the defendant's boxes more attractive. Defendant agreed that the idea of the sketch was very good, but refused to purchase it from the plaintiff because of its charge of $150 for the plate and sketch. The defendant, however, postponed giving the plaintiff a decision by tactics that were evasive. When the plaintiff's salesman requested that they return the sketch, Oliver, one of the officers of the defendant company, informed him on one occasion that the sketch was in the safe and the other partner had the key. Several days later, the salesman attempted again to procure the sketch, and another officer of the corporation, Greenbaum by name, informed him that the sketch was up at his house, as he wanted to show it to his wife. The salesman testified that he made at least ten efforts to procure the sketch over a period of two weeks and the defendant postponed returning it, offering various excuses, several of which have been enumerated. The evidence clearly shows that during this time the defendant had submitted the sketch to their customary box manufacturer, requesting him to quote them a price on boxes using a "similar" design. The price quoted was the same as the price they ordinarily paid and they ordered the boxes. Both the box manufacturer and the defendant's witnesses were quite explicit in stating that the word "similar" had been used with reference to the new boxes that were to be made, but it is significant that no sketch of the design to be used by their usual manufacturer was requested, and the defendant did not see the design on the boxes until they were delivered. When dealing with the plaintiff a sketch was requested first. In view of all the circumstances, the court has no alternative but to decide that the appropriation of the plaintiff's property, to wit, the design and sketch, was wilful, wrongful and made in absolute disregard of the plaintiff's property rights.

In fact, the box manufacturer who procured the order stated that he did not want to get into any trouble with anybody and asked Mr. Oliver whether the design was registered. When the court asked him "What answer did you get to that question?" the witness replied: "I got the order."

That the plaintiff had a common law property right in the sketch submitted to the defendant company is not questioned by the defendant. The authorities in support of this established principle are fully set forth in 13 Corpus Juris, 945, et seq., and 6 Ruling Case Law, 1102, et seq. The defendant's attorney, at the hearing, stated he was satisfied that an injunction might issue. The only question seriously raised is as to the measure of damages. The Pennsylvania authorities establish the principle that when a tort is committed wilfully, maliciously or so negligently as to indicate a wanton disregard of the rights of others punitive damages may be awarded. In the case of Pittsburgh R. R. Co. v. Lyon, 123 Pa. 140, the plaintiff was damaged as a result of an unreasonable railroad regulation. The jury was permitted

to award punitive damages, the court saying: "But in torts the rule is different; the motive of the defendant becomes material. In those that are committed through mistake, ignorance, or mere negligence, the ordinary rule is mere compensation; but in such as are committed wilfully, maliciously or so negligently as to indicate a wanton disregard of the rights of others, the jury are not restricted to compensation merely. They may, if the evidence justifies it, give vindictive or exemplary damages, such as will not only compensate the injured party, but at the same time tend to prevent a repetition of the wrong, either by the defendant or others." Accord, Sorg *v.* Frederick, 255 Pa. 617. Even in cases of negligence, exemplary or punitive damages may be awarded: Wright *v.* Philadelphia R. T. Co., 236 Pa. 132. In replevin actions the same rule governs: Duroth *v.* Cauffiel, 243 Pa. 24. These cases are supported by the decision in Spencer *v.* Carlisle Borough, 63 Pa. Superior Ct. 513, and by the rule established in 1 Sedgwick on Damages (9th ed.), 686, *et seq.* In the latter authority it is stated that punitive or exemplary damages "may be allowed when the act was wilfully wrong, . . . or in known violation of law." There can be no question but that the appropriation made by the defendant of the plaintiff's property was wilful, fraudulent and in utter disregard of the plaintiff's rights. The plaintiff, therefore, is entitled to punitive or exemplary damages. Judgment is, therefore, awarded in favor of the plaintiff for $300. The injunction also should issue.

The six requests for findings of fact presented on behalf of the plaintiff are affirmed.

Of the six requests for conclusions of law presented on behalf of the plaintiff, those numbered 6, 7, 8 and 10 are affirmed, and those numbered 9 and 11 are refused.

Of the requests for findings of fact presented on behalf of the defendant, the 1st, 2nd, 3rd, 4th and 6th are affirmed, and the 5th, 7th, 8th, 9th, 10th and 11th are refused.

Of the requests for conclusions of law presented on behalf of the defendant, those numbered 12, 13, 16, 17 and 18 are affirmed, and those numbered 14, 15 and 19 are refused.

## Conclusions of law.

1. The plaintiff had a common law property right in the sketch which it submitted to the defendant and the defendant wrongfully appropriated the plaintiff's property.

2. The wrongful and unlawful appropriation by the defendant was wilful, fraudulent and in utter disregard of the plaintiff's property rights, and, therefore, the plaintiff is entitled to exemplary damages in the sum of $300.

3. The plaintiff is entitled to an injunction restraining and enjoining the defendant from in any way making further use of the design belonging to the plaintiff.

4. It is ordered that the defendant either cover the design on the boxes it now has remaining which are decorated with the plaintiff's design or destroy those boxes.

5. That defendant pay the costs of this proceeding.

## Decree nisi.

And now, to wit, April 17, 1930, it is hereby ordered, adjudged and decreed that the defendant be restrained and enjoined from in any way making use of the plaintiff's drawing or sketch; that the defendant be ordered to destroy or cover the design on the boxes it now has remaining which are copies of the plaintiff's design; and that the defendant pay to the plaintiff the sum of $300.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days from the date of service thereof, a form of formal decree may be presented then to be entered.

NOTE.—No exceptions were filed.