(118 So. 513)

**PHILLIPS et al. v. SIPSEY COAL MINING CO. et al.   (6 Div. 823.)**

Supreme Court of Alabama.   May 10, 1928.

Rehearing Denied Nov. 1, 1928.

300

L. D. Gray and J. B. Powell, both of Jasper, for appellants.

Curtis, Pennington & Pou, of Jasper, for appellees.

THOMAS, J. The bill was in the nature of an interpleader, and sought affirmative relief against some of the respondents. As originally filed September 9, 1922, it sought to have the court take jurisdiction of the subject-matter, to require respondents to propound their claims to royalties for coal mined in the month of August, 1922, and thereafter to adjudge the respective interests owned in said lease of date of July 10, 1914. Thus the purpose of this pleading was (1) to have the lease exhibited, established, and construed, and (2) to determine complainant's liability to E. J. Phillips or his two children, C. L. Phillips and Mary Wood.

Respondent Catts answered, admitted the allegations of the bill, set up his broker's or agency agreement with the lessor Phillips, and claimed a per ton compensation or indebtedness for his alleged services in procuring the lease. In response to appropriate demurrer, Catts was stricken from the bill as an improper party. Phillips et al. v. Catts, 206 Ala. 594, 91 So. 579; Catts v. Sipsey Coal Min. Co., 212 Ala. 421, 102 So. 895.

In 1914, E. J. Phillips and wife, being the owners of the land described as about 339 acres, were, and are now, domiciled thereon, entered into the lease with "J. E. Dilworth, trustee," gave right to the latter to mine the coal from the land on terms and conditions expressly stated in the lease that was transferred to complainant. The latter opened a coal mine, established its entry and mining plant, commissary and employees' houses on these lands near Phillips' dwelling. From this operation of the same, certain controversies arose regarding the royalties that eventuated in a suit at law and one in equity. In the suit in equity, E. J. Phillips exhibited his lease in form and substance as that now exhibited by complainant, and materially different from that which is set up in the Phillips answer and cross-bill.

The respondents, C. L. Phillips and Mary Wood, amend their answer in the instant suit —made it a cross-bill averring certain provisions of the lease to the effect that, should dispute arise as to the amount of the coal mined by Dilworth's successors, "*the railroad weights shall govern as to all coal shipped.*" These respondents allege that disputes had arisen; that complainant habitually and continuously mingled coal mined from the Phillips land with coal taken from other lands, thus making it impossible for Phillips to ascertain from railroad weights the quantity of coal mined and shipped from the Phillips land; that they have no other method of ascertaining the amount of coal mined and shipped from said land by complainant, except the record of railroad weights, as they had contracted and agreed upon in the lease; that such commingling of coal destroyed their instrumentality of admeasurements; and that complainant be enjoined from so commingling its coal in the railroad car; that respondents have no way of protecting themselves against fraud and imposition in making settlements with the Sipsey Coal Mining Company under the lease other than required in the lease.

It is further set up in the Phillips-Wood answer and cross-bill that complainant is unlawfully using the leased property for its employees working in other mines, dumping débris from said other mines on the Phillips property; that "since the complainant has begun operation of said mines on the lands of the said Empire Coal Company, or other lands, the rents and royalties accruing to these respondents, and under the said lease, have been materially decreased, and in fact, according to the statements furnished by the complainant to these respondents, only about one-third of the total of coal mined under the lands embraced in said lease, and these respondents are under no duty to furnish such surface rights to the complainant for the purpose of mining coal from lands other than those embraced in said lease, and they are greatly injured and damaged by reason of the fact that the complainant has used, and is continuing to use, the same for said purpose; that such uses by the complainant were not contemplated by the terms of said lease"; and further alleges that complainant has been using the Phillips timber, contrary to lease provisions, in other mining operations. The answer and cross-bill concludes with appropriate prayer for injunction in many respects indicated.

The Sipsey Coal Mining Company answers that it had the right to—

"remove, without further compensation, over and through said lands, all coal mined from any and all other lands that may be acquired or used by the lessee, his successors, heirs or assigns, during the mining of coal from any of the lands hereby leased or while the minimum royalty of $50 per month is paid; and complainant says that it is still mining coal from under the lands contained in said lease, and that it is still paying royalties that amount to more than the minimum royalty contained in said clause. That it has acquired other lands as contemplated by said clause, and has the right to mine the same so long as it continues to mine coal from the lands covered by the lease or pays the minimum royalty of $50 per month. Complainant says that it is mining coal from adjacent lands, and has been for a long time. That it dumps said coal over the same tipple that it dumps the coal mined from cross-complainants' lands; and does dump same in the railroad cars with coal dumped from lands of the cross-complainants, and which is contained

in the lease, and it has the express right to mine said coal under the lease, from said adjacent lands, and to do so the only feasible way to handle same is to dump it in the same railroad cars. * * *

"That when one of these mining cars is loaded in the mine under cross-complainants' land, that it is brought to the tipple with the check number of the miner digging the coal. That it goes on the scale, and the weigh boss weighs the same, takes down the weight of same on his daily sheet of the coal mined from that particular mine. That, when a car is loaded from the other mine under the adjacent mine, it is brought to the tipple, with the check number of the miner. That it is weighed by the weigh boss, and placed on his daily sheet for that mine. That he makes up his daily report, showing how many tons of coal are mined from cross-complainants' mine, and how many tons from the Empire lands, and that same is easily known, as they are operated by different numbers and different men. That, by merely adding together all the coal that goes over the tipple from one of the mines, it shows the amount that went into the particular railroad car. If the coal is placed in the washer, it will likewise show how many tons went into the washer from each mine; that the coal weighs less when it goes through the washer, and the average deduction from both mines gives the net amount after washed. That the railroad weights will bear the same ratio as the ratio is shown being mined from each of said mines."

Further, it denies it is due anything for unpaid royalties; admits the use of the one mining camp, commissary, and employees' houses on Phillips' lands for employees working in its other mines, and business purposes; and asserts that the clauses in the contract give that right; that it has dumped "slate, etc., at or near the tipple" on the surface, under its lease from Phillips; that this is as an incident to its general mining rights, and not a wrongful use of the surface. This answer further alleged that, since complainant was served with notice of forfeiture, C. L. Phillips and Mary Wood had been paid, and accepted, $500 as royalties thereby waiving forfeiture, if cause therefor existed. This answer was filed on June 25, 1923.

Respondents Phillips and Wood aver that they were the purchasers of the land from their father, E. J. Phillips, for a valuable consideration, without any intention of defrauding his creditors; that he has not collected any rent or royalty since February 21, 1921, and such as have been paid "have been paid to" them. It was after this pleading that the decree on demurrer against said Catts (May 18, 1925) resulted in his elimination as a respondent to the original bill as amended.

Thereafter, on August 20, 1925, complainant amended its original bill, averring the conflicting claims of the Phillips and that of Mrs. Wood, the several claimants for the royalties, the garnishment at law by Catts, and claim made for complainant's solicitor's fees; and asked that it be permitted to make payment of royalties into the registry of the court. And on the same day Mrs. Wood withdrew her former answer and cross-bill, repudiated the act of the solicitors theretofore representing her, filed an answer opposed to that of her father and brother, claimed one-half of the royalties in her own right, admitted many or most of the averments of the original bill as amended, repudiated any effort by her for the collection of royalties or a claim of forfeiture, asked the court to establish her rights in the subject-matter, and to so decree.

Thereupon, on August 26, 1925, E. J. Phillips, Ola Phillips, and C. L. Phillips recast their pleading; denied compliance by the original complainants with lease provisions, or the payment of the royalties due; noted the elimination of Catts as a party pursuant to the decision of this court; exhibited a copy of the alleged lease that was materially different from that exhibited by the original bill; denied that the amounts of royalties received and paid into court are the full amounts due; alleged that any doubt as to whom royalties were to be paid was brought about by the acts of the complainants and their dealings with Mrs. Wood and her husband; denied the right of complainant to attorney's fees to be paid from the fund; averred that the attempted transfer of the lease and conveyances to C. L. Phillips and Mary Wood was for the purpose of relieving the aged father in his effort to collect royalties, or to provide for the support of him and his wife during their lifetime; averred the trust in that behalf and the undertaking thereof by C. L. Phillips and Mary Wood; that this was explained to complainant, and royalties were agreed to be paid pursuant thereto, and did pay some of the royalties to such transferees.

Again injunction was sought to prevent commingling of coal from Phillips' land with that taken by complainants from other lands, and in other respects, as we have indicated above, as to the several and respective uses of the Phillips land. It is further charged in that answer and cross-bill that—

"the complainant has begun operation of said mines on the lands of the said Empire Coal Company or other lands, the rents and royalties accruing to these respondents, and under the said lease, have been materially decreased, and in fact, according to the statements furnished by the complainant to these respondents, only about one-third of the total amount of coal mined by the complainant has been mined under the lands embraced in said lease, and these respondents are under no duty to furnish such surface rights to the complainant for the purpose of mining coal from lands other than those embraced in said lease, and they are greatly injured and damaged by reason of the fact that the complainant has used, and is continuing to use, the same for said purposes; that such uses by the complainant were not contemplated by the terms of said lease.

"* * * Complainant has no right or authority under and by the terms of said lease to

haul or transport coal from other lands over and through the lands belonging to the respondents until the mining of coal under the leased lands has ceased, or until it has mined all the workable coal from such leased lands, and these respondents allege that there are and were during the time complainant has been mining coal from other lands large amounts of workable coal in and under said leased lands; that complainant is mining large amounts of coal from other and different lands than those contained in said lease, and using respondents' surface for such purposes as hereinabove alleged, and have been so doing since about two years prior to the filing of this bill of complaint, and will continue to do so, unless enjoined by this court from doing so. That these respondents are greatly damaged by such act or acts on the part of complainant. * * * That the deeds executed by E. J. Phillips conveying to C. L. Phillips and Mary Wood all of the lands and property belonging to the said E. J. Phillips and Ola Phillips, were without consideration, and were never turned over or delivered to the said Mary Wood or C. L. Phillips by the said E. J. Phillips or Ola Phillips, but that the said E. J. Phillips now has, and has had since the execution by him, possession of said deeds; that said deeds were not to be delivered or turned over to the said C. L. Phillips and Mary Wood until an instrument in writing was drawn up between said parties with reference to the said E. J. Phillips and Ola Phillips having and retaining possession of all of said lands during their lifetime."

This pleading concludes with an appropriate specific prayer for injunctive relief, in many respects, as to the several matters indicated as the method of mining employed and contrary to lease provisions, the use of houses, timber, and surface land, for accounting and required payment of all sums due, and for which complainants are liable, in the several respects indicated, for payment of sums in the hands of the register; "that, since the said Mary Wood, one of the respondents in this cause, has revoked the agreement to collect the rent and royalty due under the lease under which the complainant has operated its said mine, if your honors deem it necessary and expedient, a trustee or other person be appointed by this court under proper restrictions to collect such rents and royalties which may be due under said lease by the complainant, and to turn the same over to the said E. J. Phillips and Ola Phillips during their lifetime, and that the said Mary Wood be restrained from further asserting a claim to such rents and royalties, and that she be restrained from using any of such rents and royalties for her own use, or converting any of the same to her use, during the lifetime of the said E. J. Phillips and Ola Phillips"; and concludes with a general prayer for relief as unto the court may seem just and equitable in the premises.

■■ What of the conduct of E. J. Phillips and wife in filing the bill against complainants, founded upon and setting up the lease as now before us as Exhibit A to the original bill, and litigating the same as shown by the pleading in both cases? It is urged that said parties should not be permitted, in the same court of equity, about the same subject-matter and the same parties or privies, to assert a materially different lease. Having knowledge of the facts, parties and privies are not permitted to assume an inconsistent position dealing therewith to the prejudice of the other party to such litigated controversy; that is, one who defeats or procures a judgment by pleading a thing or judgment in one aspect will not be permitted to give it in another and contrary aspect "in the same or another suit founded on the same subject-matter" or unchanged status thereof. Caldwell v. Smith, 77 Ala. 157; Hill v. Huckabee, 70 Ala. 183; Hodges v. Winston, 95 Ala. 514, 11 So. 200, 36 Am. St. Rep. 241; Harrison v. Harrison, 200 Ala. 379, 76 So. 295; McQuagge Bros. v. Thrower, 214 Ala. 582, 108 So. 450.

■■ It is further declared by the courts that inconsistent elections are irrevocable, without the mutual consent of the parties at interest, Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420, 95 So. 191; Alexander v. Mobile Auto Co., 200 Ala. 586, 76 So. 944; Lowy v. Rosengrant, 196 Ala. 337, 71 So. 439; Ex parte Logan et al., 185 Ala. 528, 64 So. 570, 51 L. R. A. (N. S.) 1068, Ann. Cas. 1915C, 405, and that an answer and cross-bill must be construed with the antecedent pleading and not a departure therefrom, Ward, Adm'r, v. Patton, 75 Ala. 207; Williams v. Jones, 79 Ala. 119; Behan v. Friedman, 216 Ala. 478, 113 So. 538; Ex parte Conradi, 210 Ala. 213, 97 So. 569; Lowery v. May, 213 Ala. 66, 104 So. 5; Burke v. Burke, 208 Ala. 503, 94 So. 513; Wilson et al. v. Henderson, 200 Ala. 187, 75 So. 935; Harton v. Little, 166 Ala. 340, 51 So. 974. Such are pertinent general rules.

■ When the father, E. J. Phillips, and Ola, his wife, C. L. Phillips, the son, and Mary Wood, the daughter, filed their original pleadings, they presented no conflict as to royalties or liability of complainant mining company, and respondent's pleadings were for the benefit of the father, in enforcing his rights under the lease. The pleadings and evidence considered as a whole so impress us. A court of equity will adjudge the whole controversy on its merits and under the contract made by the parties, not under a disability forbidding the right of contract; and the lease entered into is not such a one-sided contract as forbids enforcement in a court of equity. It is, however, shown that Phillips and wife owned and were domiciled (as their homestead) on an undivided tract of land consisting of about 339 acres; that they had a scant support from the surface use thereof; that they needed and desired that the mining right therein be developed that they might have the immediate help of royalties stipulat-

ed for; that they had not the advantage of education, nor were they experienced in the conduct of coal mining, as was the lessee. The lease was drawn by distinguished counsel after the contracting parties had fully or repeatedly considered or discussed the same, and the possibility of a lien from the Howard Lamar claim or judgment, its early lapse or bar of the statute, if not immediately asserted against the lands; the required indemnity provided for and secured by Dilworth's check for $1,500 to pay the claim, if asserted, and Phillips' mortgage for like amount to secure such sum, if paid by Dilworth, deposited with counsel in escrow. It is further shown as to this that such claim lapsed or was not insisted upon; the check and mortgage were not delivered to said other party; that there was redelivery of Dilworth's check to him, and, on failure to find mortgage in the attorney's office, a receipt was given to Phillips against the mortgage or the assertion thereof by Dilworth. The performance or the happening of the contingency contracted against was necessary to delivery. Gibson v. Gibson, 200 Ala. 591, 76 So. 949; Harris v. Geneva Mill Co., 209 Ala. 538, 96 So. 622.

The whole status of the parties is set up in the pleading and shown by the evidence. The amended answer and cross-bill of E. J., Ola and C. L. Phillips contain the averment of the change in the pleading of Mrs. Wood; the fact of her antagonistic relation thus assumed to the trust created for the benefit of the aged father; that she had acted in such representative relation with the brother, C. L. Phillips, for the father; that she had repudiated the trust (by her pleading) and the assertion of a hostile interest in the lands, or rights growing out of the same, or to the right of damages under the lease, if such had accrued by reason of acts of the lessees as to surface rights, or in mining, or the failure to prosecute the same with required reasonable diligence as expressed in the lease. There is no estoppel presented or has arisen that prevents or protects the original complainant against a full accounting to E. J. Phillips under the lease entered into, and the interpleader and accounting invoked by lessee. It sought the aid of a court of equity, submitted fully to its jurisdiction all litigable matters between the parties and their respective claims and liabilities, and sought establishment of the contract and its full construction by the court. The one must account to the other under the terms of the contract, invoked by complainant to its establishment and construction; having in mind the respective relations, purposes, duties, and obligations of the parties given expression in the lease as necessarily implied in the writing employed and executed.

The prayer of this last pleading in the cross-bill was for: (1) Establishment of the true lease; (2) accounting as to royalties due on the amount of coal mined and to require payment thereof to E. J. Phillips; (3) to ascertain the reasonable amount due for transportation over said land from other lands for coal mined from the latter; (4) to declare a forfeiture of the copy of the Phillips lease held by complainants; (5) to ascertain and compel payment for *coal mined from Phillips' land and shipped, per railroad weight and as the instrument or measure set up*, for such purpose, in the lease; (6) and for injunction as to the several violations of material provisions of the lease. As to this, the prayer is:

"That upon a final hearing of these answers and cross-bill your honors will issue a temporary injunction restraining and prohibiting complainant from hauling and transporting coal mined from other and different lands than those described in the lease under which it is operating said mines, over and through the lands belonging to these respondents and included in said lease until all the coal that can be reasonably mined, and that, upon a final hearing of this cause, said temporary injunction be perpetual and complainant be forever so enjoined.

"That your honors will issue a temporary injunction enjoining and restraining complainant from using the surface lands of these respondents in maintaining houses for employees engaged in mining coal from lands other than those embraced in said lease and from using said surface in maintaining and operating a commissary, shops, and other buildings, or structures thereon to be used or employed in mining such coal from lands not embraced in said lease, and from dumping slate and other débris from other lands not embraced in said lease on said surface lands belonging to these respondents; that the complainant be enjoined and restrained from using timber from the lands of these respondents in mining coal from other lands not embraced in said lease, and that, upon a final hearing of this cause, such temporary injunctions be made perpetual and complainant be forever so enjoined."

It is further prayed that the register be directed to pay over to E. J. and Ola Phillips all moneys paid into court as royalties, and that the court will by appropriate order direct the payment of sums due for rents and royalties. And the amended answer and cross-bill was to further effect that the court prevent original complainant from commingling coal from the Phillips land with that taken from other land, before the same is weighed in the railroad car, and thus destroy lessors' contract right for ascertainment of the amount of coal mined and shipped as indicated by railroad weights in the car; that is to say, injunctive relief was sought by Phillips to preserve his contract stipulations as railroad weights shall govern as to the amount of coal shipped where the matter is in controversy. It is further sought by the pleading that the attempted transfer by Phillips, to his daughter, of certain rights in the land, be canceled and annulled as a cloud on Phillips' title and his right to the royalties in question. The conveyance by E.

J. Phillips and wife to Mary Wood is on the same date as that to C. L. Phillips and that of the attempted transfer of the Phillips-Dilworth lease to C. L. Phillips and Mary Wood—March 28, 1921.

The Sipsey Coal Mining Company and Mary Wood answer the cross-bill, denying and taking issue on the foregoing averments of fact that need not be further recited at length. The answer exemplifies the method of conduct of its mining operation and keeping separate on its books the amount and tonnage of coal mined on the Phillips land from that of its other land; asserts this is the only practical way of mining, transporting, working, and delivering same to the railroad cars for transportation to market.

The record is made up of many pages of pleading, exhibits, and evidence. The testimony is taken before commissioners; and the rule or presumption of oral evidence given in open court before the trial judge does not obtain or support the correctness of the decree rendered. Hodge v. Joy, 207 Ala. 198, 201, 92 So. 171.

It is unnecessary to consider the question of necessary or proper parties. Hodge v. Joy, 207 Ala. 198, 92 So. 171. This has been decided on former appeal, and the trial court has conformed to that former ruling. Catts v. Sipsey Coal Mining Co., 212 Ala. 421, 102 So. 895; Phillips v. Catts, 206 Ala. 594, 91 So. 579.

Courts do not look with favor upon conditions subsequent for forfeiting contracts, unless the language shows that purpose, and it would be unjust and inequitable to uphold the instrument after such breach. Shannon v. Long, 180 Ala. 128, 60 So. 273; Lowery v. May, 213 Ala. 66, 71, 104 So. 5; Libby v. Winston, 207 Ala. 681, 93 So. 631. The evidence shows the cause of asserted forfeiture was that of nonpayment of royalties, and that there were subsequent payments and receipts on account of royalties by Phillips, or to his account and benefit. These acceptances were a waiver of any forfeiture for nonpayment of royalties within the time. Zirkle & Moore v. Ball, 171 Ala. 568, 54 So. 1000. Such payments and receipts are only to be taken as credits on accounting.

The distinction between conveyances and instruments under and by which benefits and use for life are reserved, and those to take effect at death as wills, is not pertinent. Self v. Self, 212 Ala. 512, 103 So. 591; Hall v. Burkham, Hall et al., 59 Ala. 349. We need not consider the doubtful evidence of delivery of the conveyance to Mrs. Wood. These instruments before us and the attempted transfer of the Phillips copy of the lease will be considered together, in the light of the evidence of C. L. Phillips and E. J. Phillips, and their declaration of the trust in Mrs. Wood. The evidence shows that she is unaccustomed and unlearned in such matters,

and may have misunderstood its import Considering the evidence relating to her asserted conveyance as being freed of the trust and as affecting said lands, the preponderance of the evidence is that of the creation of a trust for the aged father, E. J. Phillips, and to aid him in the collection of his much needed royalties. This may be shown, as between the parties, by parol. The exceptions to the general rule as to resorting to parol evidence as to conveyances are to show the date, the true consideration, and the fact of delivery vel non. Harris v. Geneva Mill Co., 209 Ala. 538, 96 So. 622; Corley v. Vizard, 203 Ala. 564, 84 So. 299; Jones v. First Nat. Bank, 206 Ala. 203, 89 So. 437; Formby v. Williams, 203 Ala. 14, 81 So. 682; Manning v. Pippen, 95 Ala. 537, 11 So. 56. Aside from this disputed and doubtful question of delivery, or otherwise, and aside from the powers contained in the recent statute, section 8046, Code of 1923, effective August 17, 1924, and not impairing the obligation of contract then existing (Cox v. Hutto, 216 Ala. 232, 113 So. 40), the grantors (of such an estate incumbered with a trust for grantors' benefit during life) may revoke and cancel the same for a substantial failure or refusal of the consideration, or failure or refusal of the performance of the obligation assumed, or repudiation or abandonment of the terms and execution of the trust, although the conveyance was properly executed and delivered, and notwithstanding the fact that no fraud intervened in the procurement of the making and execution thereof. The codification of section 8046, Code of 1923, was to state the decisions of this court as to cancellation of such conveyances and as affecting the original parties and privies not bona fide purchasers. Ballenger v. Ballenger, 208 Ala. 147, 94 So. 127; Morrow v. Morrow, 213 Ala. 131, 104 So. 393; Hannah v. Culpepper, 213 Ala. 319, 104 So. 751; Mooney v. Mooney, 208 Ala. 287, 94 So. 121. Such cases are sui generis, "and with them the courts deal on principles not applicable to ordinary conveyances," Russell v. Carver, 208 Ala. 219, 220, 94 So. 128, and "the courts very generally have found a way" to relief "in such cases," Brindley v. Brindley, 197 Ala. 221, 72 So. 497; Johnson v. Chamblee, 202 Ala. 525, 81 So. 27; Woodley v. Woodley, 201 Ala. 662, 79 So. 134.

The primary questions for decision, involved on the accounting, interpleader, and construction sought, are: (1) What is the lease entered into? (2) What are the effects of its terms? (3) And in what respects and amounts are the original complainants indebted to E. J. Phillips under the terms of said lease of date of July 10, 1914?

The bill is that of a bill in the nature of a bill of interpleader, and in its final analysis is for the establishment of the lease, construction and accounting under the lease. The essentials for an accounting are given

expression in Julian v. Woolbert, 202 Ala. 530, 532, 81 So. 32; Grand Bay L. Co. v. Simpson, 205 Ala. 347, 87 So. 186.

The filing of such a bill presupposes a submission of the whole controversy to a court of equity to adjudge the rights of the respective parties in res. In such a matter the court had the jurisdiction and full power to canvass all the facts, adjudicate the claims of the parties, and to render a just decree in the premises, and make an end of litigation between the parties as to such subject-matter. The mere filing of the bill for accounting implies that there are unadjusted or controverted items on both sides; that the balance is uncertain; and that the true amount and to whom due must be ascertained by the court; and implies an offer on the part of the complainants to pay any balance that might be found owing to defendant. Specific averment of such an offer is not required; it is implied in the resort to an accounting. Grand Bay Land Co. v. Simpson, 205 Ala. 347, 87 So. 186; Crowson v. Cody, 215 Ala. 150, 110 So. 46; Henry v. Ide, 209 Ala. 367, 96 So. 698; O'Kelley v. Clark, 184 Ala. 391, 394, 63 So. 948; Indian Ref. Co. v. Van Valkenburg, 208 Ala. 62, 93 So. 895; Hamilton v. Terry F. & L. Co., 206 Ala. 622, 91 So. 489; Lunsford v. Shannon, 208 Ala. 409, 94 So. 571; Julian v. Woolbert, 202 Ala. 530, 81 So. 32; Mabry v. Ray, 208 Ala. 615, 95 So. 6; Clark v. Whitfield, 213 Ala. 441, 105 So. 200; Alston v. Alston, 34 Ala. 15; Goodwin v. McGehee, 15 Ala. 232, 248; Nelson and Hatch v. Dunn et al., 15 Ala. 501, 515.

The nature, distinction, and right of a bill of interpleader, and that of a bill in the nature of a bill of interpleader, have been adverted to by the court. The distinction is important to be observed as affecting the asserted rights of the parties in the establishment, construction, and cancellation of conveyances or leases, the injunctive relief sought, and as affecting the right of allowance to complainants for the reasonable expense incurred as attorney's fees.

In Stewart v. Sample, 168 Ala. 270, 53 So. 182, the interpleader was under the statute, section 6050, Code of 1907; yet the essential conditions therefor or stated are: (1) The *same debt, thing, or duty* claimed by the parties *against* whom relief is demanded; (2) adverse titles from a common source; (3) the *person asking relief by interpleader must not have, or claim, any interest in the subject-matter;* (4) and must have incurred no independent liability to either of claimants; (5) and must stand perfectly indifferent between them as mere stakeholder. This is the rule stated in 5 Pomeroy's Eq. Jur. (1 Eq. Rem.) § 43. In Wheeler v. Armstrong, 164 Ala. 442, 453, 51 So. 268, 271, the difference between a bill of interpleader and the remedy known as a bill in the nature of a bill of interpleader is remarked, and the latter as be-

ing proper and "in which a complainant may also seek relief," and that the fact that he "claims some substantial interest or right in the controversy *does not bar him of his right to the remedy of interpleader.*" Groves v. Sentell, 153 U. S. 465, 14 S. Ct. 898, 38 L. Ed. 785. The cases of Johnson v. Blackmon, 201 Ala. 537, 78 So. 891, and Marsh v. Mut. Life Ins. Co., 200 Ala. 438, 76 So. 370, were interpleaders in equity, while Alexander City Bank v. Home Ins. Co., 214 Ala. 544, 108 So. 369, and Cloud v. Dean, 212 Ala. 305, 102 So. 437, were bills in the nature of a bill for interpleader. And such are the proceedings in the nature of an interpleader, when under the statute, whether at law or in equity. Alexander City Bank v. Home Ins. Co., supra; section 10390, Code of 1923; section 6050, Code of 1907.

The codification as to actions in the nature of interpleader in Code of 1923, as section 10390, extended the provisions of section 6050, Code of 1907, pertaining to costs and attorney's fees as theretofore exercised in bills of interpleader. It is as follows:

"* * * Said court shall hear and determine all questions which may arise in the case, may tax costs at its discretion, and, under the rules applicable to an action of interpleader, may allow to one or more of the parties a reasonable sum or sums for counsel fees and disbursements, payable out of the said fund or property; but no such allowance shall be made unless it is claimed by the party in his complainant or answer."

The present Code, with this amendment, became effective by the terms of the Governor's proclamation on August 17, 1924. The instant bill was filed September 9, 1922, before the foregoing provisions became the law as to a bill in the nature of a bill of interpleader. The amendment of the complainant of date of August 20, 1925, claiming attorney's fees out of the debt found to be due by it, did not relate back to the filing of the bill, and to the prejudice of the respondent in the original bill. Section 9513, Code of 1923. When the bill was filed, no such right to attorney's fees existed; when the amendment was made, it was dependent upon its allowance and in its relation to the commencement of the suit on the fact that such amendment does no injustice to the opposite party. If so, it should not have been allowed, and will not be so related to the beginning of the suit. Section 9513, Code of 1923.

The interest of the Coal Company and that of E. J. Phillips are hostile, and the original complainant does not stand indifferent, under this pleading and evidence, as related to E. J. Phillips and Mrs. Wood. No attorney's fees for complainant or adversary parties in interest may be permitted and ordered paid from Phillips' royalties ascertained to be due on construction of contract and on accounting by complainant.

The common-law rule for interpleader denied such right of allowance, when it develops that a complainant had a substantial, though not a direct, interest in the result. Such is the fact as to the asserted surface rights acquired or permitted complainant Coal Mining Company by Mrs. Wood, as to the discharge of débris.

In Groves .v. Sentell, 153 U. S. 465, 485, 14 S. Ct. 898, 905, 38 L. Ed. 785, 792, Mr. Chief Justice White recognizes the difference in a strict bill of interpleader, and that in the nature thereof, as follows:

"The general rule is that a party who has an interest in the subject-matter of the suit cannot file a bill of interpleader, strictly so called. In fact, the assertion of perfect disinterestedness is an essential ingredient of such a bill. Killian v.'Ebbinghaus, 110 U. S. 568, 572 [4 S. Ct. 232, 28 L. Ed. 246, 248]; Mitchell v. Hayne, 2 Sim. & Stu. 63; Bedell v. Hoffman, 2 Paige [N. Y.] 199; Atkinson v. Manks, 1 Cow. [N. Y.] 691." * * *

"Though it was allowable when so situated to file a bill in the nature of a bill of interpleader (Bedell v. Hoffman, supra) we think it clear that his ultimate interest prevents him from being allowed his solicitor's fee from the fund dedicated to the payment of the mortgage, thereby diminishing the security of the mortgage creditor."

See, also, New York Life Ins. Co. v. Dorsett, 152 La. 67, 92 So. 737; Dunlap v. Whitmer, 137 La. 792, 69 So. 189; 33 C. J. 470.

We are impressed, and so hold, that the original complainant is not indifferent as to the result of the litigation, as it now progresses between E. J. Phillips and his daughter, Mrs. Wood, in and to the subject-matter before the court, and in which they are vitally interested. It has employed her husband since the litigation began, and he or she has given, or sought to give, it certain surface rights as opposed to those of E. J. Phillips, as to the depositing of débris at or about the mouth of the mines, etc.

Though the position of complainant be adversary as to E. J. Phillips, wife and son, yet it may file its bill, as we have indicated, as a bill in the nature of a bill of interpleader, to have the court establish which of the copies exhibited is the true lease, and to construe the same as related to its method of conduct of mining operation on the two tracts of land, and through one tipple and washer to the railroad car; to say whether it violates the rights of either party under the lease in mixing the coal in the railroad car before it is weighed by that transportation company. This fundamental question of destruction or preservation of leasehold interest vel non is necessary for decision, and inherent in the accounting invoked by complainant. The amount of royalties due are dependent on such weights and tonnage of coal mined. This method of discharge at the mouth of the mines is alleged by respondent as a fraud or violation of its rights as lessor, however honestly employed. Edmundson v. Mullen, 215 Ala. 297, 110 So. 391.

The jurisdiction of a court of equity in cases of the establishment of a contract in which fraudulent alterations are made and the construction thereof, and in fraud (in cases in which it takes cognizance), is as broad and far reaching as the forms, devices, and ramifications of fraudulent evasions can extend. Vanderbilt v. Mitchell, 72 N. J. Eq. 910, 67 A. 97, 14 L. R. A. (N. S.) 304; Crane v. Conklin, 1 N. J. Eq. 353, 22 Am. Dec. 519; Randazzo v. Roppolo (Sup.) 105 N. Y. S. 481; 21 C. J. 107. This ample jurisdiction and power, to do justice in matters as to contracts, the establishment and construction of their terms subject to construction, are expressed in the long line of cases from English v. Lane, 1 Port. 328, to Gewin v. Shields, 167 Ala. 593, 52 So. 887, and to protect against frauds involving property rights of the parties. Sims v. Riggins, 201 Ala. 99, 77 So. 393; Bullard Shoals Min. Co. v. Spencer, 208 Ala. 663, 95 So. 1.

The fact that the Phillips draft of the lease and as sought to be assigned, was fraudulently altered, did not defeat the rights of E. J. Phillips secured to him by the true lease. In Gay v. Fricks, 211 Ala. 119, 99 So. 846, an altered deed was held admissible as evidence of the completed and executed transaction, and that the alteration thereafter in a material part did not divest the right or interest as originally created and conveyed; and title vested by deed or lease as executed was not affected by alteration. Sanford v. Empire Land Co., 212 Ala. 568, 103 So. 655. It was the memorial of the rights which vested by reason of that transaction. Ala. State Land Co. v. Thompson, 104 Ala. 570, 573, 575, 16 So. 440 (53 Am. St. Rep. 80); Gresham v. Pogue, 211 Ala. 457, 100 So. 636.

The lease of the mineral right and other uses of the surface land in question, between E. J. Phillips and John E. Dilworth, trustee, the predecessor in'title to the Sipsey Coal Mining ˙ Company, the complainant, was executed to the extent of the delivery of possession, the opening up and operation of the mine on Phillips' land. The respective vested rights under the lease are not affected by any unlawful alteration of Phillips' copy of the lease made for the purpose and attempt to transfer to his children his rights in the creation of a trust in his behalf. The true contract was the subject of complainant's bill in the nature of a bill for interpleader, for its establishment, construction, and accounting thereunder. The true lease was exhibited by complainant's bill, and that pleading implied, and, in fact, contained, the necesssary offer to fully submit to the jurisdiction of the court of equity, and to do equity as ascertained and declared in the premises by that tribunal. This offer and implication by the filing of the bill was to account for the

operation of the mines, according to the lease, and to pay the royalties accruing and other items of accounting as and to whom they were due. The establishment and construction of the contract sought in complainant's pleading extended to, and must embrace, all of its terms. Like the accounting sought, it meant that the jurisdiction of the court was invoked to the establishment of the full rights of the respective parties under the lease and the mining operations thereunder. The alterations in the Phillips copy of the lease only extended to, affected, and vitiated the transfer and conveyances predicated thereon, sought to be made to the son and daughter, C. L. Phillips and Mary Wood, and not the vested rights of Dilworth's successor and of E. J. and Ola Phillips. The trial court so held.

▌▌▌ Again we observe that the evidence is voluminous. It is sufficient to say that Exhibit A to the original bill of complainant, Sipsey Coal Mining Company, was declared the correct and true lease by E. J. Phillips, in his former suit in which it was exhibited as the true lease. And that exhibit was part of his said bill. Grimsley v. First Avenue Coal Co. (Ala. Sup.) 115 So. 90.[1] It was upon this copy of the lease, as a part of his pleading, that settlement and judgment by consent rested. It is the same in material and legal effect as that in complainant's possession, or that of his counsel, at all times. In the possession of the latter, the copy had its original eyelet fastenings, and each sheet was on water marked paper, as indicated in Mr. Davis' evidence. That draft of lease offered by Phillips showed change as to lands embraced, of material conditions as to subject-matter, a change in the fastening of the several sheets from eyelets to staple brads, and several leaves bear no water mark, etc. The lease exhibited by complainant contained the same lands that were embraced in the indemnity mortgage to secure payment of the $1,500 if made on the Lamar claim; and that mortgage was executed or drawn at the time of the execution or delivery of the lease. And both papers (lease and mortgage) and Phillips' copy contained the stated aggregation of 339 acres. The description of the land employed was by the recognized or government subdivision in complainant's draft of the lease and in the Lamar indemnity mortgage, and the same was of the aggregate of 339 acres. In the draft of the lease held by Phillips, there was a discrepancy or shortage of the 40-acre tract in question; yet that discrepancy was not indicated in its recited area. When the whole evidence is considered, we are impressed that the trial court reached the proper conclusion in establishing the lease between Dilworth and Phillips as that contained in complainant's Exhibit A. In fact, that was within the estoppel or res judicata of the pleading in the first suit by E. J. Phillips against said lessee, though that case eventuated in a judgment by consent after payment of the royalties. The leading cases on res judicata are: Crowson v. Cody, 215 Ala. 150, 110 So. 46; Clark v. Whitfield, 213 Ala. 441, 105 So. 200; McNeil v. Ritter Dental Mfg. Co., 213 Ala. 25, 104 So. 230; Cogburn v. Callier, 213 Ala. 38, 104 So. 328; Schillinger v. Leary, 201 Ala. 258, 77 So. 846; Terrell v. Nelson, 199 Ala. 438, 74 So. 929; Hall & Farley v. Ala. T. & I. Co., 173 Ala. 398, 56 So. 235; Wood v. Wood, 134 Ala. 557, 33 So. 347; Lehman Durr Co. v. Clark, 85 Ala. 109, 4 So. 651; Tankersly, Adm'r, v. Pettis, 71 Ala. 179; Gilbreath v. Jones, 66 Ala. 129; Miller v. Jones' Adm'r, 29 Ala. 179; McCravey, Ex'r, v. Remson, 19 Ala. 430, 54 Am. Dec. 194; Duchess of Kingston's Case, 2 Smith's Leading Cases, 609 [573].

▌▌▌ The circuit court, in equity, correctly held that the material and unauthorized alteration in the draft of the lease sought to be transferred by E. J. Phillips to C. L. Phillips and Mary Wood conveyed to said purported transferees no rights, and they could collect no royalties by reason thereof. Such rights, royalties, and damages secured and accruing thereon or arising from the operation of the mines thereunder were those of the lessor, E. J. Phillips, and likewise those secured by law to him and his wife, Ola Phillips, in leading with the homestead, and the wife in the right of dower in the event of the husband's death; that is to say, the complainant is the owner of said lease, rights and privileges thereunder, and will account to, and settle with, E. J. Phillips according to the terms of that instrument, and for any damages, trespasses, or unlawful acts caused by it in dealing with the subject of the lease.

In view of the insistences of Phillips and the receipt by him or for him for royalties, as related to the time of the submission of the controverted questions to a court of equity, and payments into the registry of the court, no forfeiture of said lease will be declared while their respective rights are being determined. In this we agree with the finding of the trial court.

During the existence of the lease, complainant, as a successor in title to Dilworth, trustee, has opened and operated its mine, built employees' houses, commissary, washer, tipple, ways, etc., on the Phillips land, and extended the entry of that mine into a mine operated by it on other leased lands. It cannot be said that disagreement or dispute had not arisen as to royalties and amount of coal taken from Phillips' lands, in the face of this evidence and other suits exhibited. Moreover, the true lease by complainant is sought to be established and construed. This means and necessitates a full and true construction of the lease and all of its terms —that the parties are not agreed as to their

---

[1] 217 Ala. 159.

meaning and liability by reason of mining, etc., thereunder.

■ The "lease" is of date of July 10, 1914, and for a period of years within that provided by statute. Code of 1907, § 3418. It may not extend for a longer period. Miller v. Woodward, 207 Ala. 319, 93 So. 28; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Western Union Tel. Co. v. Louisville & N. R. R. Co., 202 Ala. 542, 81 So. 44. It is not shown by the exhibit to have been within the amendment providing for a longer time, if acknowledged as required by law for conveyances of real estate, and within one year after execution recorded in the office of the judge of probate, in the county in which the property is situated. Gen. Acts 1911, p. 24. Therefore all of the terms of the lease are limited to the period indicated therein, if not determinable before that date.

The rights of removal of ways machinery improvements authorized thereon are fixed therein at the "*expiration* or *termination*" of the lease for any cause, *or when all the workable coal from the land herein described that can be profitably mined has been removed.*" That right is conditioned upon the payment, by the lessee, his successors or assigns, within a reasonable time, of all royalties then due. Then parties shall "have the right to remove from the leased premises all improvements of every character they have placed or caused to be placed thereon." Such were the contract provisions for removal of improvements, etc. Hays v. Ingham-Burnett Lumber Co., 217 Ala. 524, 116 So. 689.

In the recent case of Ala. Chem. Co. v. International Agr. Co., 215 Ala. 381, 383, 110 So. 614, it was declared provisions for a final determination, decision, or arbitration as to contested items or conditions precedent to payment of charges, estimates, etc., the subject of contract, are within the power of the contracting parties to provide that such decision of the chosen agency is final and unassailable merely on the ground "for mistake;" but that it is "only for fraud or flagrant disregard of duty, or for adoption of construction of contract known to be wrong, amounting to fraud." It is further declared that courts will look to gross error or mistake, working injury, as evidential matter, from which bad faith may be inferred or implied, where the charge is that the result declared amounts to a fraud on vested rights under the contract. In Abercrombie v. Vandiver, 126 Ala. 513, 532, 28 So. 491, 496, it was declared:

"It may be conceded as settled law, that the parties to a contract may stipulate that the estimate of the work done and the compensation due under it, to be made by a third party, shall be final and conclusive, and such stipulation is binding in the absence of fraud or bad faith. * * * It is equally true that the estimate of the amount due is not binding in the absence of a provision in the contract to that effect."

Again in Cassels v. Alabama City, G. & A. Ry. Co., 198 Ala. 250, 256, 73 So. 494, 497, it was declared:

"A written contract existed between the parties, governing charges by plaintiff for electric current to be furnished defendant's mill; and it was therein provided that a meter should be used for the measurement of current so furnished, and was specified how, when meter charges appeared to be excessive, the question of the reasonableness thereof should be determined. If the contracting parties were unfortunate in their attempt to provide against excess meter charges for current, some other method of disputing the meter and computing the charges cannot be set up in lieu of the contract method."

And in Catanzano v. Jackson et al., 198 Ala. 302, 306, 73 So. 510, 512, it is said:

"While the parties to a contract may stipulate that the estimates of the work done and of the compensation to be paid therefor shall be made by a third party, who shall also have power and be charged with the duty to pass upon the character of the workmanship employed and upon the quality of the materials used, yet in this regard the action of such third party will be final and binding on the parties only in the absence of fraud and bad faith. Railroad Co. v. March, 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255; Chicago Co. v. Price, 138 U. S. 185, 11 S. Ct. 290, 34 L. Ed. 917."

And this rule was applied in Central of Georgia Ry. Co. v. Isbell, 198 Ala. 469, 73 So. 648.

The rule in such controverted matter of fact, under contract provisions, is later stated in Brotherhood of R. R. Trainmen v. Barnhill, 214 Ala. 565, 570, 108 So. 456, 460 (47 A. L. R.), as follows:

"The freedom of the right of lawful contract, the sustaining of agreements for inspection, arbitration, and award in matter of controversy, and submission to the constructions and estimates of architects and engineers as arbiters in the premises, have been familiar subjects of judicial decision, and held not to infringe upon the foregoing provisions of organic law. George v. Roberts, 207 Ala. 191, 92 So. 1; Id., 186 Ala. 521, 65 So. 345; Shriner v. Craft, 166 Ala. 146, 158, 51 So. 884, 139 Am. St. Rep. 19, 28 L. R. A. (N. S.) 450; Abercrombie v. Vandiver, 126 Ala. 513, 28 So. 491; 6 Cyc. pp. 40, 45."

■ These decisions have not recognized other agencies or ways of ascertainment, or settlement of such disputed material questions of fact than that set up for the purpose and acted upon by the contracting parties. In this respect Dilworth, trustee, and E. J. Phillips specifically contracted in the draft of the lease that complainant establishes, and now seeks, construction, and it is unequivocally declared as the respective right and measure of duty in operating the Phillips mine that a true accounting as to coal mined and shipped therefrom, or for shipment, be subject to certain ascertainment by rail-

road weights. This could not mean less than said weights per car so shipped. The lease on this point is its best interpreter, saying, as it does:

"That the lessors, in person or by agent, shall at all reasonable times have the right to examine and inspect the mines in, under, and upon the above described lands, and should any dispute arise as to the amount of coal mined the railroad weights shall govern as to coal shipped; and on or by the 20th of each month the lessee, his successors or assigns, shall mail to the lessors, their successors or assigns, a statement showing the amount of coal taken from said lands, used during the preceding month in or about the mines, or sold locally and not shipped or to be shipped."

Thus the contract requirements and rights of "amount of coal mined" from the Phillips land provide that reports be made of the coal mined; that at reasonable times Phillips shall have the right to examine and inspect; and, should dispute arise as to "amount of coal mined," that the railroad weights "*shall govern as to coal shipped.*" Thus the only coal taken from Phillips that was not subject to this method of weight and determination by way of railroad weight was that "*used*" by the lessee during "the preceding month, *in and about the mine,*" or that "*sold*" by it "*locally and not shipped or to be shipped.*" If "shipped or to be shipped," and there is dispute as to its weight and amount, the agency, instrumentality of final authority and determination, mutually agreed upon by the parties, must speak for them respectively. In the absence of fraud, they must abide by that announcement of material fact. It imposed the duty upon Phillips to abide thereby and take his stipulated royalties for coal shipped as indicated by railroad weights. It imposed the duty upon Dilworth, trustee, to rightly conduct its business of mining as to correctly inform Phillips, on reasonable examination and inspection, the amount of coal mined and shipped. And this imposed upon Dilworth, trustee, and rested upon his successor in lease interest, the duty of so conducting its mining business and operations of coal taken from the leased lands "to be shipped," as not to destroy the contracted measure or agency set up by the parties for the purpose of ascertaining or admeasuring the amount or tonnage of coal taken from Phillips' land for shipment. That was another way of saying not to mix and commingle coal—the products of two or more mines or leases—in the same railroad car that its weight would not so inform.

The pleading and evidence show a conduct of business on the part of complainants of commingling in the same railroad car the Phillips coal for shipment with that from its other lands destined for shipment; that this commingling was done at the point of discharge from coal or mine cars; and that it was discharged into the railroad car mixed and undistinguishable as to respective amounts taken from the different mines, except only by the weights by complainant of its respective coal discharged in the railroad car. Complainant has no right to set up, as its conduct of business, an agency for weighing and inspecting different in terms to which he acquired coal taken from Phillips' land, other than that stated in the lease by Phillips. And this is the result when it destroyed that agency and manner of inspection stipulated for by the parties. They must account and pay according to their reasonable leasehold stipulations as per this tonnage and at the agreed royalty. The commingling of coal in railroad cars was the destruction of the contract purpose of railroad weights, and amounted in law to a fraud against the other party to the contract, however honest the one party thereto may have been in his dealings with the other in such respect, Wilson v. Windham, 213 Ala. 31, 104 So. 232, and should have been prevented in the future by injunction, as prayed in Phillips' cross-bill. See, also, Leader v. Romano, 208 Ala. 635, 95 So. 7.

The case has been tried, judgment rendered, and directions given to the register on a different method of admeasurement, though there has been, and is now, a serious controversy and dispute between the parties as to the amount of coal mined and shipped from these lands.

It is stipulated in the lease, as we have indicated, that the mining and things to be done under the lease will be done in a workmanlike manner that is practical and scientific. This gave no right to lessee, or authorized no method of conduct of its several mining operations, to disregard or refuse to the lessor his right of reference to railroad weights, to ascertain the amount of coal shipped or to be shipped. In Pollak v. Stouts Mountain C. & C. Co. et al., 184 Ala. 331, 334, 338, 63 So. 531, 532, 533, the lease provision was to the following effect:

"The lessee also agreed that it would, with all convenient speed, proceed to develop the coal on the premises leased, and to prosecute the removal of the same from the mine as rapidly as its business would justify; and that it would conduct its mining operations in a good, businesslike manner, with a view to extracting the largest tonnage from the premises and to the preservation and protection of the underground ways in the event it should not exhaust the coal deposit during the term of the lease."

And the court said of the duty to duly prosecute the work with diligence:

"The lease under which the bill is filed, providing for the faithful and diligent prosecution of the work on the part of the lessee, and, the bill alleging a failure to so prosecute it, the complainant, of course, would be entitled to damages on account of such failure, and they would be recoverable in this suit, as incidental to the accounting and to afford complete relief.

The bill having averred all these facts, they must, on this hearing, be considered as true, and, if so, the complainant would be entitled to relief in respect to each of these matters, which the chancellor, by sustaining the demurrer, has denied him."

The cases touching such duty and liability for the failure to prosecute the work as it is engaged to be done are collected in Carper v. United Fuel Gas Co., 78 W. Va. 433, 89 S. E. 12, L. R. A. 1917A, page 178.

It was for the express purpose of procuring his coal to be mined with a due and practical diligence and for the collection of royalties that were the moving causes for Phillips' entry into such contract, and not for the purpose of affording the lessee access to other lands and mineral he possessed or desired to possess. And the lessee must primarily and in good faith conduct its operation and mining of Phillips' coal and account to him for royalties accruing therein.

The other beneficial provisions secured to Dilworth, as the right to remove without further compensation, over or through Phillips' land—all coal mined from any and all other lands that may be acquired or used by the lessee, his successors, heirs and assigns, "*during the mining of coal from any of the lands hereby leased, or while the minimum royalty of $50.00 per month is being paid*," as the "amount of the rent to be paid for such use of said land after the mining herein provided for ceases, so long as the haulage ways and other improvements constructed in, under, and upon the same are used in mining or hauling coal from other lands or in any manner incident thereto"— must be considered with the other and later provisions of the lease requiring that mining on Phillips' land proceed in a *practical and scientific workmanlike* manner. When so considered, it is required that the lessees begin within 60 days from date of the lease, and under the provisions proceed with the mining of Phillips' coal in good faith and with reasonable diligence until the "expiration" or "termination" of the lease, or until "all the workable coal" that "can be profitably mined has been removed." Under such a required practical, scientific, and workmanlike method of mining coal and the definition by this court of such provisions in mining leases (Pollak v. Stouts Mountain C. & C. Co., 184 Ala. 331, 63 So. 531), the trial court will proceed with its accounting between the parties for rents, royalties, and damages.

The complainant Sipsey Coal Mining Company, as successor in right, "assignee of the reversion" from Dilworth, as trustee, (1) without other compensation to Phillips than that stated in the lease, has the right of entry, haulage of coal, and its discharge and delivery through the Phillips lands for the period stated in the lease, and so long as there is a due and bona fide mining of coal from Phillips' lands with diligence and a due

regard to the superior coal mining rights of Phillips, contracted for by the parties. It was not the expressed intent of the parties that some coal, from time to time, be mined from Phillips' land, for the purpose merely of extending the time or period of the lease and mining operations thereunder, and thereby provide and extend lessee's right of entry, ways, discharge, and operation of its general business and mining of coal from other lands.

(2) It further follows, from the construction given the contract here "established," that said lessee, or "assignee of the reversion," will so conduct its mining of the Phillips coal as to observe and preserve the admeasurements as to railroad weights—the memorial and arbitrament stipulated and contracted for in the lease of all coal mined, report and account to Phillips therefor; that of all coal mined and to be shipped from Phillips' land that lessee or "assignee of the reversion" so conduct its mining operation, discharge at the tipple and washer to the railroad car, in unmixed carload lots, in order that the weights per carload lots of the Phillips coal be preserved as agreed in the lease and be available to Phillips per railroad weights in the event of controversy as to the same.

(3) A reasonable construction of the contract exhibited to complainant's bill is to the further effect that the mining company was not to use its employees' houses situated on the Phillips land for its other employees, engaged in mining coal from other lands of lessee than that acquired from Phillips; and not to use timber cut from the Phillips land for its business of mining coal from other of its leased lands; and not to discharge upon Phillips' land rock or other débris from other of its mining lands; and to make due restitution to Phillips for damages or injury to his land done without contract leave therefor, such as for waste placed thereon from other lands, etc. It further follows that injunctive relief should be granted as prayed as to the foregoing matters, and that the same be evidenced in the final decree rendered.

(4) It further follows that the transfer of Phillips' copy of the lease and the attempted conveyances predicated thereon, and sought to be made in trust for Phillips to Mrs. Wood et al., be canceled and set at naught by the final decree rendered; that any rights, easements, or privileges granted by Mrs. Wood to the Sipsey Coal Mining Company be declared not of binding effect as against E. J. and Ola Phillips (except only as to royalties recited in the pleadings to have been paid to Mrs. Wood and her brother for Phillips).

(5) That the order to the register to pay over the funds to the circuit court be revoked until there is another and further accounting for the amount of royalties, damages, etc., pursuant to the matters indicated.

The costs, not taxed against S. W. Catts,

but imposed upon E. J. Phillips, are apportioned between the Sipsey Coal Mining Company, original complainant, Mrs. Mary Wood and R. J. Phillips; and the cost of preparing the transcript and of appeal to this court be likewise required to be paid by E. J. Phillips, Sipsey Coal Mining Company, and Mrs. Mary Wood in equal parts.

The decree of the circuit court is affirmed in part as establishing the true lease and declaring there is no forfeiture of the same that may now be enforced or awarded to E. J. Phillips, under the decree of the original bill as amended, and in declaring that lessee has no right to use any part of the lands for any tenant houses that are not used by the agents "or servants of lessees who are engaged in mining coal from the leased premises," under the cross-bill and answer of E. J. Phillips. This use should have been protected by injunctive process as prayed by Phillips' cross-bill.

In other respects the decree of the circuit court is reversed, and the cause is remanded as to the original bill as amended and as to the cross-bill and answer of Phillips as amended.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

On Rehearing.

THOMAS, J. It should be said as to the discharge of débris from other mines of complainant, upon the surface of Phillips' land, that such matter is usually made specific by the stipulation on written contract. The authorities now urged by appellee, as to the right of discharge of such débris, are cited for the first time on rehearing. They were not incorporated in the original brief nor considered by this court. However, the court and parties desire a right construction of the contract, and such is the purpose of the writer of the opinion.

Examining again the whole writing established and construed, it was that of a lease coupled with an interest for the time indicated, and had a triple purpose.

(A) It was primarily for the right of mining Phillips' coal evidenced by lease (1) for the period of 20 years of "all the coal in (workable seams)" under and upon the 339 acres of lands specifically described; (2) for the right of all timber and water upon said land necessary for "the development, working and mining of said coal," and the removal of the same; (3) the right of way for roads "necessary for the convenient transportation of said coal from said lands; and (4) the right to convey and transport "to and from said lands" all material and implements used in mining and removal of said coal or in the preparation of the same for market. These terms had restricted application to the coal taken from said lands specifically described—Phillips' land.

(B) The lease is then given a further field of operation in the contracted right to build all such houses and structures necessary or desirable (1) for the use of employés, (2) for machinery or any business connected with or in any wise appertaining or incidental to the mining of coal, provided the use of said land for agricultural purposes may not be unnecessarily disturbed. In its context, this applied primarily to the use of houses for employés engaged in mining of the Phillips' coal and was so construed by the trial court, and no appeal was taken by the lessee as to this.

(C) The provision for structures and machinery, or any business connected with or in any wise appertaining or incidental to the mining of coal, as tipple, washer, and ways, etc., in its context has a broader application than that merely for the mining of coal from Phillips' land. Its immediate context, relation, and reasonable construction, is, not only as to the mining of coal from Phillips' land, but to the mining of coal "from any and all other lands that may be acquired or used by the lessee, his successors, heirs or assigns, during the mining of coal from any of the (Phillips) lands," or "while the minimum royalty of $50.00 (per month) is paid," as "rent" for the use of said land, after the mining provided for has ceased—"so long as the haulage ways and other improvements constructed (for mining) in, under or upon the same (Phillips' lands) are used (1) in mining or (2) hauling coal from other lands or in any manner incident thereto."

(D) That is to say, the "haulage ways" provided for the use of other lands or coal mining leases that may be acquired, was for "the right to remove" (without further compensation than the $50 per month minimum royalty or rent for the use or lease), over and through the Phillips land, "all coal mined from any and all other lands that may be acquired" during the period of the lease, if the same was not sooner terminated for specified causes. What did "the right of removal" from lands not owned by Phillips embrace? Was that provision in the contract within the rule of latent ambiguity or shading thereof, recognized by the courts as open to construction or reasonable implications? Sadler v. Radcliff, 215 Ala. 499, 111 So. 231; Copeland v. Warren, 214 Ala. 150, 107 So. 94; Lowery v. May, 213 Ala. 66, 104 So. 5; Aiken v. McMillan, 213 Ala. 496, 506, 106 So. 150.

The annotations and discussion of this question may be found under the subheading of "Right of owner of title to or interest in minerals under one tract to use of surface in connection with mining other tract." 48 A. L. R. 1406 et seq.

If there is ambiguity in respect to the rights secured as to the deposit of débris at the

mouth of the mine entry—at the tipple and washer—the necessary machinery and facility appurtenant or incidental to the business of mining different tracts of land, or from other leases, were duly constructed, installed, and employed by the lessee with full knowledge by Phillips. It was only after such installation, and a controversy as to royalties had arisen between the parties, that the right of discharge of the general mine débris on the surface appears to have been controverted by Phillips.

Such right, as that before us, has been the prolific source of litigation in the courts of the United States, Himrod v. Ft. Pitt Min. & Mill. Co. (1916) 151 C. C. A. 596, 238 F. 746; Id., 135 C. C. A. 648, 220 F. 80; in California, Dietz v. Mission Transfer Co., 95 Cal. 92, 30 P. 380; Illinois, Leavers v. Cleary, 75 Ill. 349; Consolidated Co. v. Schmisseur, 135 Ill. 371, 25 N. E. 795; in Iowa, Peters v. Phillips, 63 Iowa, 550, 19 N. W. 662; Madison v. Garfield Coal Co., 114 Iowa, 56, 86 N. W. 41; Moore v. Price, 125 Iowa, 353, 101 N. W. 91; in Kentucky, Moore v. Lackey Min. Co., 215 Ky. 71, 284 S. W. 415, 48 A. L. R. 1402; Imperial Elkhorn Coal Co. v. Webb, 190 Ky. 41, 225 S. W. 1077; and many cases in Pennsylvania that are illustrated in McCloskey v. Miller, 72 Pa. 151; Webber v. Vogel, 159 Pa. 235, 28 A. 226; Potter v. Rend, 201 Pa. 318, 50 A. 821; Cubbage v. Pittsburg Coal Co., 216 Pa. 411, 65 A. 797; Weisfield v. Beale, 231 Pa. 39, 79 A. 878; Westerman v. Pennsylvania Salt Mfg. Co., 260 Pa. 140, 103 A. 539, 15 A. L. R. 943; Shaulis v. Quemahoning Creek Coal Co., 262 Pa. 535, 105 A. 826; in Virginia, Clayborn v. Camilla Red Ash Coal Co., 128 Va. 383, 105 S. E. 117, 15 A. L. R. 946; in West Virginia, Findley v. Armstrong, 23 W. Va. 113; in England, Dand v. Kingscote, 6 Mees. & W. 174; Durham & S. R. Co. v. Walker, 2 Q. B. 940; Midgley v. Richardson, 14 Mees. & W. 595; Bidder v. North Staffordshire R. Co., L. R. 4 Q. B. Div. 412; and in Scotland, 48 A. L. R. 1408.

Recognizing the effect of such general authorities, the lessee acquiring the right, title, or interest in the mineral in place under the Phillips land, contracted for the use of the passage through Phillips land for transportation or right "to remove" the mineral taken from other lands thereafter to be acquired during the period of the Phillips lease. Clayborn v. Camilla Red Ash Coal Co., 128 Va. 383, 105 S. E. 117, 15 A. L. R. 957. Adverting to the effect of the general authorities from other jurisdictions and cited above, the general rule is thus declared:

"* * * The lessee or grantee of minerals in place, as the owner of the minerals and the space they occupy, to use the gangways and underground passages cut through his own minerals, for the purpose of going to and removing minerals mined from other lands, he has no right, in the absence of agreement, express or necessarily implied, to the use of surface privileges for the purpose of such outside mining operations, inasmuch as the use of surface privileges for such purposes is not ordinarily deemed incidental to the rights granted, nor reasonably necessary to their exercise."

And such is the rule, in the absence of agreement, in Alabama, given expression in Hooper v. Dora Coal Min. Co. (1892) 95 Ala. 235, 10 So. 652; Brasfield v. Burnwell Coal Co. (1912) 180 Ala. 185, 60 So. 382; and the cases of Bagley v. Republic I. & S. Co. (1915) 193 Ala. 219, 69 So. 17, and Corona Coal Co. v. Hendon (1922) 208 Ala. 513, 94 So. 527, are not in conflict, as we shall later indicate. As applied to the uses or acts indicated, affecting openings and shafts for the purpose of transportation, in the absence of express or implied agreement, the lessee of minerals has no right to use openings (upon the surface of premises that it has leased) for the taking out of coal from an adjoining land not owned by the lessor, is the holding in Brasfield v. Burnwell Coal Co., 180 Ala. 185, 60 So. 382; and where the grantee of coal in place has ceased to mine the same to an appreciable extent, it is declared that in the "absence of an express grant," he may not use the "openings" thereon for the purpose of transporting coal from the mines in adjacent lands, is the decision in Hooper v. Dora Coal Min. Co., 95 Ala. 235, 10 So. 652. Such is the effect of the general authorities.

Again looking for analogy to the question before us, contained in the Brasfield and Hooper Cases, for the use of "roads and surface ways," as affecting the lessee's use of adjacent lands, in the Brasfield Case, supra, it was held in the absence of agreement express or implied, a lessee of coal has no right to use of tracks upon the leased premises for transportation of coal from adjoining land not owned by the lessor; and in Hooper v. Dora Coal Min. Co., supra, the grantee of coal in place ceasing to mine it to appreciable extent "may not, in the absence of express grant, use the surface privileges for the purpose of transporting coal from mines on adjacent lands" not owned by the lessor. The general authorities are to a like effect.

And, in the examination of these authorities, the right to use, etc., for, or appliances, etc., for the purpose of loading and handling minerals, in Hooper v. Dora Coal Min. Co., 95 Ala. 235, 10 So. 652, it is stated that in the absence of express grant (or reservation, as the case may be), the owner of mineral (or mining right) in place (such did Dilworth's contract touch) has no right to use the plant erected on the surface of the land for loading (discharging, etc.) of coal mined on adjacent land, not owned by lessor. In Brasfield v. Burnwell Coal Co., supra, in the absence of agreement, express or implied, the lessee of coal in place has no right to the use of tipples constructed and located upon the leased premises for the purpose of handling coal from ad-

joining land not owned by the lessor. So, likewise, in the right of installation or use of ventilating shafts and machinery, this court refused to restrain the lessee of mineral rights (on and off complainant's lands) with mining privileges, from using air shafts and fans upon the surface of the leased premises in ventilating the mines under the leased premises and that in adjacent lands connected by underground passage; the additional use in question occasioning no injury to the right of the owner to the surface. We will again refer to the Brasfield and Bagley Cases.

Likewise, in the use of the surface for the purpose of drainage, it was held that in the absence of express reservation or grant, the owner of minerals in place has no right to eject or discharge upon the surface foul water allowed to accumulate in the mines on adjacent lands. Hooper v. Dora Coal Min. Co., supra.

And as to the "other use of the surface," it is held in this jurisdiction as follows:

"* * * That, in the absence of agreement, the lessee or grantee of minerals in place does not have the right to the use of 'houses' located upon the surface of the leased or granted premises, in connection with mining operations carried on upon other and adjacent lands. Brasfield v. Burnwell Coal Co. (1912) 180 Ala. 185, 60 So. 382; McCloskey v. Miller (1872) 72 Pa. 151.

"And in the absence of agreement, express or implied, the lessee of coal in place has no right to the use of commissaries located upon the leased premises, in connection with mining operations carried on upon other and adjacent lands. Brasfield v. Burnwell Coal Co. (Ala.) supra." 48 A. L. R. 1416.

There are general authorities to support this holding.

From the foregoing it follows:

"While it is generally (though not universally) held that the owner of minerals in place has the implied right to a reasonable use of the surface of the land for dumping or piling refuse from the mine, it is uniformly held that, in the absence of agreement, express or necessarily implied, he has no right to dump upon the surface the refuse from mines upon adjacent tracts." 48 A. L. R. 1414.

That is to say, it held, on this use, by our court, that—

"In the absence of agreement, express or implied, the lessee of a coal mine has no right to dump upon the surface of the leased premises slate and other refuse matter taken from adjoining land not owned by the lessor. Brasfield v. Burnwell Coal Co. (1912) 180 Ala. 185, 60 So. 382. * * * In the absence of express reservation or grant, the owner of minerals in place has no right to dump slate and other obnoxious refuse taken from mines on adjacent lands onto the surface of the land overlying the minerals reserved or granted. Hooper v. Dora Coal Min. Co. (1892) 95 Ala. 235, 10 So. 652." 48 A. L. R. 1414, 1415.

To like effect are many general authorities in 48 A. L. R. 1414, 1415. And provisions of a lease expressly authorizing the dumping of slate taken from the leased premises are no authority to the lessee, "even by implication, to dump slate taken from adjoining land not owned by the lessor. Brasfield v. Burnwell Coal Co. (Ala.) supra."

And it is declared in Hooper v. Dora Coal Mining Co., 95 Ala. 238, 239, 240, 10 So. 652, 653, where exhausting subjacent coal mined into adjacent lands:

"It is well settled, that where one person is the owner of the surface, and another of the subjacent minerals, the surface is servient to the mining right as to the occupation and use of so much as may be reasonably necessary for the beneficial and profitable working of the mines. · A reservation or grant of the minerals, severed from the ownership of the surface, carries with it the right to penetrate through the surface to the minerals, for the purpose of mining and removing them. This includes the adoption and use of such machinery, methods, appliances and instrumentalities as may be reasonably necessary, and are ordinarily used in such business; and it may be, for the storage of minerals in the first marketable state until they can be transported with due diligence. Williams v. Gibson, 84 Ala. 228 [4 So. 350, 5 Am. St. Rep. 368]. These incidental rights must be exercised with due regard to the rights of the surface-owner, without injury to the right of support for the surface, and without any permanent damage thereto, not necessary for the proper and beneficial enjoyment of the right to mine. It has been said: 'The incidental power would warrant nothing beyond what is strictly necessary for the convenient working of the coal; it would allow no use of the surface, no deposit upon it to a greater extent, or for a longer duration than should be necessary, no attendance upon the land of unnecessary persons.' Cardigan v. Armitage, 2 Barn. & Cress. 197. Possibly, under our rulings, the adverb 'strictly' confines the use of the easement within too narrow limits. 'Reasonably necessary' is the language of this court, and we prefer to make no change in a rule which we consider so conservative. Williams v. Gibson, 84 Ala. 228, 232 [4 So. 350, 5 Am. St. Rep. 368]. It does not allow defendant to use the surface for the deposit of slate, or other refuse matter, taken even from the mines underneath. Marvin v. Brewster Iron Mining Co., 55 N. Y. 538, 14 Am. Rep. 322.

"The right to use the surface, implied from the reservation or grant, arises from, and ceases with, the necessity of the case. When all the subjacent ore is dug and removed, and the mine is exhausted, there no longer exists any necessity for the use of the surface. Without an express reservation or grant, the right to use the plant erected on the surface of complainant's land, for the loading and transporting of coal mined on adjacent lands, does not exist. Midgely v. Richardson, 14 M. & W. 595. As regards the dumping of slate and other obnoxious substances, and ejecting foul water on complainant's land, the liability of defendant is the same as that of a party who occasions injury to land unconnected with the land in which the mines are worked the same

as if he were not owner of the minerals on complainant's land."

In a later case by this court, Bagley v. Republic Iron & Steel Co. (1915) 193 Ala. 219, 221, 225, 69 So. 17, 18, an injunction was disallowed that sought to restrain lessee from the mining right of discharging refuse from mines in adjacent property (not owned by lessor) upon the surface of lessor's premises, the mineral right in which was leased to respondent, but only on the ground or for the reason that said practice had been discontinued on request, and there was no threat or danger of its repetition. The court specifically declared:

"So far as the dumping of the refuse from other lands upon the surface of the lands in question is concerned, that feature may be eliminated, for the reason that the agreed statement of facts shows that this was discontinued on request, and that there is no danger of a repetition of the practice. Hence, if damage or injury from this source was sustained, the remedy is complete and adequate at law; and this distinguishes this case from that of Brasfield v. Burnwell Coal Co., 180 Ala. 185, 60 So. 382."

And declared generally:

" 'The right of transporting coal from adjoining lands through or over leased land exists, however, only so long as the coal conveyed is in good faith being mined. It would be a perversion of the intention of the parties to use such passageways merely and only for the purpose of reaching other coal, and, besides, such use would be a continual menace to the stability of the surface. If such use were allowed, no owner of the land could tell when his estate would cease to be disturbed by workings underneath. The rule laid down in the above cases is not intended, therefore, to give the grantee of coal an undisputed and perpetual right of way under another's land. The owner of the land above and below has a right to the reversion of the space occupied by the coal within a time contemplated by the parties when that coal is removed. Webber v. Vogel, 189 Pa. 156, 42 A. 4; 19 Mor. Min. Rep. 639.

" 'So, when the grantee of coal in place has ceased to mine that coal to any appreciable extent, he may not, without an express grant of such right, extend the openings to the mines to adjacent lands, mine large quantities there, and use the grantor's land for loading and transporting such coal. Hooper v. Dora Coal Min. Co., 95 Ala. 235, 10 So. 652.' "

The quotation from the Bagley Case, supra, and approval of Williams v. Gibson, 84 Ala. 228, 231, 233, 234, 4 So. 350, 352 (5 Am. St. Rep. 368), makes necessary a consideration of that opinion by Mr. Justice Somerville. This was an action of ejectment, and speaking of the rights of the parties, not as to other lands or mining operations thereon, but of the effect or extent of an exception in a conveyance of the surface, "except all the coal and other minerals in, under and upon said land, and also, except all timber and water upon the same, necessary for. * * * working and mining of said coal and other minerals" for market, and the removal of the same, "also the right-of-way," etc., "necessary for the convenient transportation of said coal and other minerals, from said land," etc. That is to say, the controversy was between the superjacent and subjacent owners of the land upon which coal was being mined; did not involve mining and disposition of débris from other lands as affecting the rights of the superjacent owner; and the question was: What, if any, surface rights passed to the grantee under the grant of all the coal and other minerals upon or in the land? Mr. Justice Somerville answered as follows:

"The express grant of all the minerals, or mineral rights in a tract of land, is, by necessary implication, the grant also to work them, unless the language of the grant itself repels this construction. This is the result of the familiar maxim that 'when any thing is granted, all the means of obtaining it, and all the fruits and effects of it are also granted.' Shep. Touch. 89; 11 Coke, 52a. This involves the incidental right to penetrate the surface of the soil for the minerals, and to use such means and processes for the purpose of mining and removing them as may be reasonably necessary, in the light of modern inventions, and of the improvements in the arts and sciences, but without injury to the right of support for the surface, or superincumbent soil, in its natural state. Marvin v. Brewster Iron Mining Co., 55 N. Y. 538; s. c. 14 Amer. Rep. 322; Wilms v. Jess (94 Ill. 464); s. c. 34 Amer. Rep. 242; Bainbridge on Mines and Mining, *35, *62, *63. * * *

"It is contended that this incidental right to work the mines on the land is limited by the special grant of certain timber and water privileges, and of the right of way to and from the mines, and that the mention of these privileges, under the maxim expressio unius est exclusio alterius, would rebut the grant of any right to occupy the surface of the soil for miners' houses, or other like purposes. It is often said that great caution is frequently necessary in the application of this maxim, and of its twin legal aphorism of synonymous meaning, expressum facit cessare tacitum. Broom's Legal Max. *506. It is obvious that without the right of surface occupation, to some extent, the grant in question is rendered nugatory. The principle is well settled that one who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as is reasonably necessary to carry on his mining operations. Turner v. Reynolds, 23 Pen. St. Rep. 199; Rogers v. Taylor, 38 Eng. Law & Eq. 574; Tenn. & Coosa R. R. Co. v. East Ala. R. R. Co., 75 Ala. 524, 525 [51 Am. Rep. 475]. To construe away this right would be to construe away the grant itself, which can not be enjoyed without it. It is our opinion that the enumeration of these special privileges was not intended to exclude another which was absolutely necessary to the very life of the grant itself. The right to use timber would not pass by implication. Bainbridge on Mines and Mining, *64. This was, therefore, the acquisition of a new and valuable right. The right of way

and water privileges were also more comprehensive possibly than would have been yielded pacifically by mere construction. At any rate these several grants themselves necessarily imply the right to occupy so much of the surface as might be needed to open and work the mines. There could be no use of timber, or water, or right of way, except in connection with working the mines, and there could be no working of the mines without an occupation of the surface in the vicinity of the shafts, slopes, or other requisite openings. These specifications strengthen rather than repel the implication in question. Marvin v. Brewster Iron Mining Co. [55 N. Y. 538] 14 Amer. [Am.] Rep. 329, supra; Bainbridge on Mines and Mining, *34, *35. * * *

"We do not construe the language of the present grant, or reservation as it appears in the deeds of the plaintiff and those under whom he claims, to confer any right by implication, or otherwise, to use the surface of the land for the purpose of erecting coke ovens, designed for the conversion of coal into coke. His only right is to mine and transport coal in its first marketable state. The contract clearly contemplated nothing else. * * *

"The evidence shows that the defendant claimed the right to occupy as much as three acres of the surface of plaintiff's land as incident to his grant. Upon this area he had erected five two-story framed miners' houses; four log cabins for the occupancy of employees; an air-shaft for conveying smoke from and ventilating the mines; a powder house for keeping powder used for blasting; a blacksmith shop; and a storehouse for furnishing the miners with supplies. Which of these improvements are reasonably necessary for the profitable and beneficial working of the mines is a question of fact to be determined from the evidence by the jury."

In this decision consideration was taken of the object and purpose for which the right was acquired, for the express grant of said mineral or mineral rights involved the incidental right to penetrate the surface therefor, to use the reasonable and necessary means and processes to the end in question—to occupy so much of the surface as is ordinarily used in such business and may be reasonably necessary for the profitable and beneficial enjoyment of the property and right in the premises.

In Holt v. City of Montgomery, 212 Ala. 235, 237, 102 So. 49, 51, Mr. Justice Gardner cited with approval the case of Williams v. Gibson, supra, saying:

"The right of ingress and egress over the lands of the plaintiff, with a right of way for roads and tracks, expressly granted in the contract, were such rights as would seem to follow by necessary implication from a sale of the gravel in the pit, with the right of the city to remove it therefrom. As said in Williams v. Gibson, supra,

" 'This is the result of the familiar maxim that when anything is granted, all the means of obtaining it and all the fruits and effects of it are also granted.' "

The Williams-Gibson Case did not decide the rights as to operation of mines in adjacent lands through entries and ways in and over leased land.

In Corona Coal Co. v. Thomas, 212 Ala. 56, 59, 101 So. 673, 675, the damages were for injury to surface resulting from the conduct of mining operations. Mr. Justice Bouldin declared:

"The liability for damages resulting from a disturbance of the surface by mining operations is absolute. * * * The law is different as to subterranean waters. The miner is not liable for any incidental damages necessarily occasioned by the ordinary and careful operation of his mines, not injurious to the surface, such as the loss of springs or wells fed by subterranean streams. Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368; Bagley v. Republic I. & S. Co., 193 Ala. 219, 69 So. 17."

In Bibby v. Bunch, 176 Ala. 585, 589, 58 So. 916, 917, Mr. Justice Sayre construed the grant of minerals and the "right to mine is servient to the right of the owner of the surface to have it perpetually sustained in its natural state," citing the Williams-Gibson Case, supra.

Such are the rights of taking mineral granted where the surface is reserved. Sloss-Sheffield S. & I. Co. v. Sampson, 158 Ala. 590, 594, 48 So. 493. What of the right in mining adjacent lands?

Again, Mr. Justice Sayre says of a mining lease, where the surface is reserved, in Corona Coal Co. v. Hendon, 208 Ala. 513, 514, 94 So. 527, citing with approval or affirming the Brasfield Case:

"Defendant's rights having been expressed in the instrument of lease or conveyance, such expression operates as a contractual limit which the court has no right to extend. Brasfield v. Burnwell Coal Co., 180 Ala. 185, 60 So. 382. Nothing to the contrary is said in Bagley v. Republic Iron & Steel Co., 193 Ala. 219, 69 So. 17, cited by defendant (appellant)."

We have not departed from the foregoing decisions as to the limitations of the right of the owner of title or interest in minerals under one tract to the use of surface in connection with the mining of other tracts in which the grantor or lessor was not interested.

There is no conflict between Williams v. Gibson, supra, declaring respective rights of mining and those of the surface on the lands of the parties, and the decision prepared by Mr. Justice Clopton in Hooper v. Dora Coal Min. Co., 95 Ala. 235, 10 So. 652, declaring the surface rights of the lessor, as affected by lessee's coal mining on adjacent lands not owned by the lessor. In the latter case the acts of the lessee were using complainant's land for loading, carrying, dumping slate, discharge of refuse water, and other liquids and substances taken from the adjacent lands and mines in which complainant-lessor was not an owner. The lease construed in Hooper's Case granted "all coal and other minerals, timber and water necessary" for the re-

moval and making ready for market "said coal," right of way for its transportation, and "material and implements" used in the removal of said coal and other minerals, or in preparation of the same for market. There was no express or necessarily implied use of the surface for such business of mining from or upon adjacent lands.

Adverting again to Brasfield v. Burnwell Coal Co., supra, it is said:

"The lessor, of course, has no right to object to the lessee's going through the Bryan lands, to get to the smaller tract of complainant's land. That is no concern of the lessor. But he certainly has a right to object to the lessee's using the surface of his land in order to mine and market the coal in the Bryan land. He has made no contract to that effect, and it is not claimed that he has ever consented to such use of his lands. He did contract, agree, for the use of the surface of his land, in order to mine the coal in his land, but not to mine coal in other people's land. The lessee has no more right to use the surface of complainant's land for mining the coal from the Bryan land, than he would have to use the surface of the Bryan land for mining coal from the complainant's land. * * *

"It is true that, but for the provision in the lease expressly authorizing the dumping of the slate, the lessee would have no right to so dump it, though it was taken from the leased premises (Hooper v. Dora Co., 95 Ala. 235, 10 So. 652); but the lease in question expressly authorized the dumping of slate taken from the leased premises. But it does not, either expressly or impliedly, authorize the dumping of slate taken from other lands; and probably it was for this reason that the chancellor enjoined the use for dumping purposes. The same reason, however, applies to the other uses of complainant's premises; but for the terms of the lease the lessee would have no right to use plaintiff's surface, for the taking of coal from the land. The lease, however, in terms authorizes it to so use the surface in taking the coal from the leased premises; but it does not expressly or impliedly authorize the use of the surface for taking the coal from other and different lands."

In Jasper Land Co. v. Manchester Saw-Mills, 209 Ala. 446, 96 So. 417, opinion by Mr. Justice Sayre, it is declared:

"Mines and minerals. * * *—Reservation of minerals with the 'usual rights and privileges of mining' includes right to cut timber used in mining operations.

"'The usual rights and privileges of mining,' as used in a deed reserving to grantor, such rights and privileges, includes the right or privilege of cutting timber to be used in mining operations." 4th Headnote on lands conveyed.

The question recurs whether, under the lease established and construed, did its provision for the right to build houses and structures, machinery "for the use" of lessee's "business connected with or in any wise appertaining or incidental to the mining of coal," and the further "right to remove without further compensation, over and through said lands, all coal mined from any and all other lands that may be acquired or used by the Lessee, his successors, heirs or assigns, during the mining of coal from any of the lands hereby leased or while the minimum royalty of Fifty Dollars is paid; it being agreed and understood between the parties hereto that the said sum of Fifty Dollars per month shall be the amount of rent to be paid for such use of said lands after the mining provided for has ceased, so long as the haulage ways and other improvements constructed in, under or upon the same are used in mining or hauling coal from other lands or in any manner incident thereto," give the right of discharge, upon the surface at or near the tipple and washer—"in a workmanlike, practical and scientific manner"—of slate rock or other débris or refuse taken from or with coal in its mining on adjacent lands not owned by Phillips and thereafter acquired? Such is the reasonable implication of the right of removal granted without further compensation, over and through said (Phillips') land, of all coal mined from any and all other lands that may be acquired or used by the lessee, his successors or assigns. This accords with the holdings that a grant of all underlying coal, with the privilege of mining and removing through the lands granted, gave the right to the grantee to bring coal from the other land to the surface through the shaft, etc., on the granted premises. Farrar v. Pittsburg Co., 28 Pa. Sup. Ct. 280; Potter v. Rend, 201 Pa. 318, 50 A. 821; Sorg v. Frederick, 255 Pa. 617, 100 A. 481; Genet v. Delaware Co., 122 N. Y. 505, 25 N. E. 922; Wadsworth Coal Co. v. Silver Creek Co., 40 Ohio St. 559; 48 A. L. R. 1417.

The opinion is modified as to the right of injunction against the workmanlike, practical, and scientific discharge of coal and its preparation for market by washing and such necessary dumping of débris therefrom on the surface at the mouth of the mine. Any other construction of the provisions of the contract, within its shadings of ambiguity, on the question for decision, would render valueless the said contract provisions for the removal of coal mined from other land than that purchased of respondent Phillips. The rules for construction of contracts are well understood and need not be repeated. Greenwood v. Bennett, 208 Ala. 680, 684, 95 So. 159; Denson v. Caddell, 201 Ala. 194, 77 So. 720.

In the light of the acquiescence of lessor, Corona Coal Co. v. Hendon, 214 Ala. 139, 106 So. 855, in the construction of the lease in favor of such reasonable use of the surface and the right of discharge thereon, illustrates the earlier purposes and intentions of the parties as to the extent and nature of the use of surface in its practical, reasonable, and workmanlike exercise of the right of removal and discharge at the washer, etc., of

débris. Giving due weight to such matters, the rules of law declared to obtain, the practical construction placed on this and other provisions of the contract by the parties, as to the removal and the necessity of discharge of débris upon the surface in the manner indicated, would prohibit the issue of injunction against: (1) The practical, reasonable, and workmanlike deposit and discharge of water and débris, in scientific mining, at the mouth of the mine, necessary and in contemplation of the parties in the preparation for market of coal taken from the lands of Phillips; or (2) against the practical, reasonable, and workmanlike deposit ·and discharge of such matter upon Phillips' surface at or near the entrance to its mines, taken in scientific mining from its other and subsequently acquired coal lands.

█ Where there is and has been a bona fide mining of Phillips' coal according to the contract, within the period and life of that lease, Dilworth, or assigns, without other compensation than the payment of the $50 per month "rent," has the "right to move * * * over and through said (Phillips') land all coal mined from" all other land that may be acquired or used by said lessee. Such is the stipulated rent so long as the "haulage ways and other improvements constructed in, under or upon the" said Phillips' land "are used in mining or hauling coal from other lands or in any manner incident thereto," so as not to extend this right beyond the life of the lease and not beyond the expiration of the stipulated term of years.

██ It may be said that if there has been acquiescence by Phillips or his authorized agent or trustee, in the commingling of his or other coal in railroad cars before weighing, for such period of acquiescence Phillips would be prevented from recovery of royalties as per railroad weights. As to any such acquiescence, the acceptance of royalties at contract price on commingled coal, with a knowledge that contract admeasurements had not been observed, would bind Phillips as to such weights and royalties so paid and accepted by him or his authorized agents. Such acquiescence or estoppel would not obtain against Phillips after the controversy.arose, his insistence on his right of admeasurement by railroad weights, and his refusal to continue or further acquiesce and consent in such a disregard of the contract admeasurement. The filing of appropriate pleading as to this unquestionably fixed a time and notice, available to the respective parties, as to the repudiation and discontinuance of the practice of commingling coal from different lands in the railroad car and the destroying of the right of resort to railroad weights in the event of controversy as to the amount of coal mined and royalties due.

The opinion is modified, and the application is overruled. The costs have heretofore been apportioned.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.